**Robert L. ALLEN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1281S339.**

Supreme Court of Indiana.

Sept. 14, 1982.

Allen Demkovich, Richard N. Smith, Himelick, Smith & Demkovich, Connersville, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Robert L. Allen, was convicted by a jury of criminal confinement, a class B felony, Ind. Code § 35–42–3–3 (Burns 1979 Repl.), criminal deviate conduct, a class A felony, Ind. Code § 35–42–4–2 (Burns 1979 Repl.), burglary, a class A felony, Ind. Code § 35–43–2–1 (Burns 1979 Repl.), battery, a class C felony, Ind. Code § 35–42–2–1 (Burns 1979 Repl.), and of being an habitual offender, Ind. Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to the Indiana Department of Correction for consecutive terms of twenty, fifty, fifty, eight, and thirty years, respectively. He raises the following six issues in this direct appeal:

1. Whether the trial court erred in admitting into evidence certain police computer printouts;

2. Whether the trial court erred in allowing a witness to identify defendant at the trial after an allegedly unnecessarily suggestive pretrial identification;

3. Whether the trial court erred in admitting into evidence certain documents during the habitual criminal phase of the proceedings;

4. Whether there was sufficient evidence to support the habitual offender verdict;

5. Whether the trial court stated sufficient reasons for giving the augmented sentences; and

6. Whether the sentences were manifestly unreasonable.

A brief summary of the facts from the record most favorable to the state shows that the victim was attacked in her home on November 24, 1980. She lived in a rural area of Indiana near the Ohio border. About a week before the attack, a man came to her door and asked for information about someone allegedly living in the neighborhood. The man, who was later identified as defendant, returned to her home two different times. On the afternoon of the instant crimes, defendant returned again to the victim's home and forced his way in with a knife. He handcuffed the victim's wrists behind her back and forced her to commit three acts of fellatio. Defendant forced the victim to show him through various rooms in the house, then hit her several times on the head and stabbed her in the back before he left.

I.

■ Defendant first contends that the trial court erred by admitting into evidence two computer printouts of Ohio motor vehicle registrations. The victim in this case had given police the Ohio license number of a blue Oldsmobile which she had written down after defendant's second visit to her home. Through the use of this license number, police were able to find defendant's home address in Middletown, Ohio. They observed two vehicles at this location, the blue Oldsmobile and a brown pickup truck.

Two police officers testified at trial that they observed a dispatcher type the two license numbers into a computer. The resulting computer printouts of the registration information showed that defendant was the owner of both vehicles. Defendant objected to the admission of these two documents on the basis that the keepers of the records did not testify to their authenticity.

This Court has approved the admission into evidence of business records which are stored on a computer and electronically printed out on demand when a sufficient foundation is laid. *Brandon v. State*, (1979) Ind., 396 N.E.2d 365. We said:

"[I]t must be shown that the electronic computing equipment is standard, that the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and that the testimony satisfies the court that the sources of information and method and time of preparation were such as to indicate its authenticity and accuracy and justify its acceptance as trustworthy." *Id.* at p. 370.

In the instant case, there was testimony that the computer used was the standard computer used in police work by the Sheriff's Department. The registration data was entered in the regular course of business as it became available to the police. The computer data was regularly relied upon by police officers in their ordinary duties in order to determine whether vehicles were listed as stolen or were registered to dangerous or wanted persons. There was no error in the admission of these computer printouts.

II.

Defendant next contends that the trial court erred in allowing a witness to testify as to his identity following an allegedly unnecessarily suggestive pretrial identification. The witness was a woman who lived in Ohio near the area in which the victim lived. She called police when she heard about the instant crime and said that a strange man had stopped at her home on two different days asking for information.

These visits were similar to the visits defendant had made to the victim's home prior to the day of the instant crimes. Police officers went to the witness's home and showed her a single color picture of defendant which she immediately identified as the man who had stopped at her house. She was next shown a single black and white photograph which she could not identify because of differences in facial hair and hair length. The police then put the black and white photograph with seven other black and white photographs and the witness picked the photograph of defendant out of this array. She identified defendant at the trial as the man who had stopped twice at her house.

 This Court has consistently used the "independent basis" test when dealing with an in-court identification which is potentially tainted by a suggestive pretrial procedure. Regardless of any suggestiveness involved in the pretrial procedure, the trial court is correct in refusing to suppress the in-court identification testimony of the witness if the court can properly find that such testimony is supported by a basis independent from the pretrial procedure. *Kusley v. State*, (1982) Ind., 432 N.E.2d 1337; *Young v. State*, (1979) Ind., 395 N.E.2d 772; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. On review, this Court will look to the totality of circumstances to determine whether there was an independent basis for the identification and whether the pretrial procedure was so impermissively suggestive as to give rise to a very substantial likelihood of misidentification. *Bundy v. State*, (1981) Ind., 427 N.E.2d 1077; *Hazzard v. State*, (1980) Ind., 413 N.E.2d 895.

 In determining the independent basis, circumstances such as the length of time the witness viewed the accused, the distance between them, lighting conditions and the witness's capacity for observation will be evaluated. *Young v. State, supra* ; *Cooper v. State*, (1977) 265 Ind. 700, 359 N.E.2d 532. In the instant case, the witness saw defendant on two occasions at close range in full daylight. There were no obstructions of her vision. The total time she

observed defendant was at least five minutes. Under these circumstances, we find there was a sufficient independent basis for the identification and the photographic identification procedure did not result in a substantial likelihood of misidentification. There was no error in admitting the in-court identification.

### III.

Defendant next contends that the trial court erred in admitting three exhibits into evidence during the habitual offender phase of his trial. These exhibits were all certified documents relating to defendant's prior offenses in California and Ohio. Defendant argues that the documents in one of these exhibits were erroneously admitted because he was not given copies of them until the second day of the trial. The court had ordered all discovery closed on a date two weeks prior to trial. However, the record reveals that these documents were not mailed from California until two days after the date for close of discovery. Defendant was given copies of these documents three days before the habitual offender phase of the trial. He moved to suppress them on the basis of noncompliance with the discovery order, and also moved for a continuance, but his motions were denied.

 It is well settled that a continuance is the proper remedy when a party's discovery has failed to disclose all pertinent information. However, the trial court is given wide discretionary latitude in discovery matters since the court has the duty to guide and control the proceedings and promote the discovery of truth. A trial court will be granted deference in finding what constitutes substantial compliance with discovery orders. *Harris v. State*, (1981) Ind., 425 N.E.2d 112; *Spears v. State*, (1980) Ind., 401 N.E.2d 331; *Reid v. State*, (1978) 267 Ind. 555, 372 N.E.2d 1149.

 In this case, defendant has not shown how he was harmed by the state's noncompliance. He was given an opportunity to explain to the court why he would need more time to prepare for the habitual

offender phase of the trial after he was given copies of all the documents. However, he did not indicate that he intended to prove any theory such as mistaken identity or invalid guilty pleas which would involve additional preparation time. He claims that he was prejudiced during his pretrial preparation because the absence of any documents from California led him to believe that the state would not be able to prove those convictions. We find no merit to this contention since defendant knew in advance of the trial that the state had filed an habitual offender count against him on the basis of prior California and Ohio offenses. He knew about the existence of the prior California offenses and did not demonstrate that he would need additional time to prepare a defense for the habitual offender count. We find no error in the trial court's denial of defendant's motions for a continuance and for suppression of the California documents.

■ Defendant also objected to the admission of one of the California documents and two other documents relating to prior Ohio convictions on the basis that these documents contained evidence of separate, independent crimes which did not result in felony convictions. The state had specifically cited three prior felony convictions in the information on the habitual offender count. One prior Ohio conviction for aggravated assault was cited, and two prior California convictions were listed in the following manner: "Assault with Deadly Weapon" and "Violating Personal Liberty of Another by Violence, Menace, Fraud and Deceit (also known as False Imprisonment)." The California document that defendant complains about lists a conviction for False Imprisonment instead of using the longer, official title of this crime. We find no prejudice here since both the short and long designations of this offense were listed on the charging information.

Defendant also complains that two documents from Ohio were prejudicial. One of these documents was an Authentication of Copy page which referred to two convictions by number. Only one of these num-

bers was the aggravated assault charge which the state had listed in the habitual offender count. The other document was a copy of a file card which listed two separate aggravated assault charges and a charge of probation violation. However, this same document also shows a dismissal of one of the aggravated assault charges. We find no abuse of discretion in the admission of these documents as they were all clearly probative and relevant to the proof of the charges alleged by the state. The fact that an additional crime charged was mentioned had no prejudicial effect when it was also shown that this same charge was dismissed. Furthermore, we have found that evidence of a probation violation on a document was not prejudicial to a defendant during the habitual offender phase of his trial. *Taylor v. State*, (1981) Ind., 420 N.E.2d 1231. We find no error in the admission of these documents.

### IV.

■ Defendant next contends that there was not sufficient evidence to support the habitual offender conviction because the state failed to prove that the prior California convictions were actually felony convictions. However, the record shows that the state introduced certified copies of the judgments and sentencing on both the prior California offenses. The page entitled "Summary of Sentence Data" shows that the sentences served on these offenses were greater than one year. It is clear that our statute defines "felony conviction" as "a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one [1] year." Ind.Code § 35–50–2–1 (Burns 1979 Repl.). *Collins v. State*, (1981) Ind., 415 N.E.2d 46. The exhibits in this case were sufficient to prove that the California convictions were felonies within the meaning of our statute.

### V.

■ Finally, defendant claims that the imposition of enhanced and consecutive sentences on the basic four counts was improp-

er when no specific findings of fact were made.

In this case, the record shows that the trial court used general terms in stating his reasons for the enhanced and consecutive sentences. The court stated:

"In each instance, the Court will find that there are aggravating circumstances. The Court will take into consideration the nature of the offense involved, and the defendant's prior criminal record, the similarity of the offenses charged; as Mr. Wilhelm stated, there were obviously no mitigating circumstances involved. * * * And the Court simply feels that the nature of the offenses involved necessitates the maximum penalty allowable. I'm aware that Mr. Allen has professed his innocence today."

This Court has repeatedly stated:

"[W]hen a judge increases or decreases the basic sentence, suspends the sentence, or imposes consecutive terms of imprisonment, the record should disclose what factors were considered by the judge to be mitigating or aggravating circumstances." *Gardner v. State*, (1979) Ind., 388 N.E.2d 513, 517.

We have pointed out:

"[i]t is clear, that in every case where increased sentences are imposed the record must show that careful consideration commensurate with the denial of liberty involved has been given to the defendant. Due care must be taken to demonstrate a thorough and thoughtful sentencing decision supported by specific and detailed reasons and an indication that the court has considered the goal of rehabilitation. The record must show that the determination of the increased sentence was based upon a consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved and the relation of the sentence imposed to the objectives which will be served by that sentence." *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316, 320.

In the instant case, the one hundred and fifty-eight year sentence was much more than the basic sentence of thirty years for a class A felony. The trial court did list the three reasons for giving the enhanced sentences as being the seriousness of the crime, the defendant's prior criminal record, and the lack of mitigating circumstances. However, since determination of an appropriate sentence must involve a balancing of many factors unique to each specific case, the mere recitation of general language of the sentencing criteria statute is not sufficient to support the enhanced and consecutive terms given here. The court must give a specific and individualized statement of why the particular facts of this case support the imposition of the enhanced sentences.

Since the record in this case is not adequate to support the imposition of the enhanced and consecutive terms of the one hundred and fifty-eight year sentence, the cause is remanded with instructions that the trial court either enter findings, if any, to support the enhanced sentences or, alternatively, to resentence defendant for the basic period. Due to the remand on this issue, we do not have to reach defendant's final issue of the unreasonableness of the sentence at this time. The trial court is in all other things affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.