Ronald **SUMNER**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 882S305.

Supreme Court of Indiana.

Sept. 14, 1983.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted, after trial by the court, of Armed Robbery causing serious bodily injury (Class A Felony), Ind.Code § 35–42–5–1 (Burns Supp. 1982), and was sentenced to thirty (30) years imprisonment. This direct appeal presents three issues for review:

1) Whether the evidence was sufficient to support the finding and judgment of the trial court.

2) Whether the trial court erred in denying Defendant a new trial on the basis of newly discovered evidence.

3) Whether the trial court erred in overruling Defendant's motion for discharge for delay in bringing him to trial.

On January 27, 1981 Robert E. Wilson was canvassing for new customers for his home shopper service. Mr. Wilson sent two assistants door-to-door with a single product; if the customer indicated an interest, Mr. Wilson, himself, would step-in to make the sale and send his assistants on to other houses.

At approximately 2:30 p.m. Mr. Wilson's assistants approached the residence at 1830 North Ingram, Indianapolis. An interest in the product, rat poison, being indicated, Mr. Wilson approached the house and was invited inside. Present were four (4) men later identified as Mark Anthony Early, Timothy Bunnell, Mark Steven Easler, and Defendant. One of the men asked Mr. Wilson to show him where, in the kitchen, he should place the rat poison. After approximately one-and-one-half minutes in the kitchen, Mr. Wilson turned around and saw the other three men standing at the kitchen door. One of the men, not Defendant, was holding a sawed-off twenty-two (.22) caliber rifle. Mr. Wilson was shot once in the abdomen and fell to the floor. The men

removed his wallet, a thirty-eight (.38) caliber revolver, and his wristwatch. He was then dragged out the front door of the house. The four men fled through the side door and down a back alley.

\*    \*    \*    \*    \*    \*

## ISSUE I

Defendant first challenges the sufficiency of the evidence to support the finding and decision of the trial court. Defendant argues that all the evidence used to convict him was entirely circumstantial and inferential, and "merely leads to conjecture, speculation, and inference that the defendant-appellant was involved."

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of witnesses." *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, 1264, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105 (citations omitted).

■ At trial Mr. Wilson positively identified Defendant as one of the four men aforementioned. He stated that Defendant was definitely in the kitchen at the time of the shooting, standing only a few feet from the man with the rifle. A co-defendant, Mark Easler, testified that Defendant had told Bunnell to invite Mr. Wilson in and to take him into the kitchen. Defendant then persuaded Mark Early to take the rifle into the kitchen and to rob Wilson. Easler also testified that Defendant removed Wilson's wallet and handgun, took the money out of the wallet, and ran from the house through a side door. According to Easler the rifle had been acquired by Defendant· earlier that day from Easler's aunt, and both the Defendant and Bunnell had earlier expressed an intention to rob someone.

Thus, in addition to Mr. Wilson's testimony placing the Defendant at the scene, there was testimony by a co-defendant that the Defendant participated in the commission of the crime, shared in the spoils of the crime, and induced another person to commit the shooting.

■ A robbery conviction may be sustained on the uncorroborated testimony of an accomplice. *Thomas v. State,* (1982) Ind., 436 N.E.2d 1109, 1111; *Reynolds v. State,* (1980) Ind., 409 N.E.2d 639, 640. Defendant's argument that there was other evidence which was exculpatory, invites us to weigh the evidence and judge the credibility of the witnesses. This we will not do.

The Indiana Code, § 35–41–2–4 (Burns 1979) reads as follows:

"A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person: (1) Has not been prosecuted for the offense; (2) Has not been convicted of the offense; or (3) Has been acquitted of the offense."

In *Harris v. State,* (1981) Ind., 425 N.E.2d 154, we held that:

"One who aids or abets another or induces or causes another to commit a criminal offense can be charged with that offense and tried and convicted as a principal .... The accomplice can be criminally held for everything done by his confederates which was a probable and natural consequence of their common plan.... It is not necessary that the evidence show that the accomplice personally participated in the commission of each element....

"A trier of fact may infer participation from a defendant's failure to oppose the crime, companionship with one engaged therein, and a course of conduct before, during, and after the offense which tends to show complicity." *Id.* at 156. (Citations omitted).

The testimony of Robert Wilson, placing the Defendant a few feet from the gunman, and that of Mark Easler, indicating the extent of Defendant's participation, are direct evidence from which a reasonable inference could easily be drawn that Defendant was an active participant in this crime,

and that he aided, abetted, and induced others to participate in it with him.

The evidence was sufficient to support the finding and judgment of the trial court.

### ISSUE II

Defendant's assignment that the trial court erred in denying his motion for a new trial predicated upon newly discovered evidence is premised upon a claim that if granted, he could show that State's witness, Easler, was testifying falsely when he implicated Defendant. He proposed to do this by showing (1) that defense witnesses, Hughes and Taylor had, by depositions given prior to trial, testified that Mark Early had acknowledged to them that Defendant had not been involved; (2) that Early, an accomplice who did not testify would testify that he would not say whether or not the testimony of Hughes and Taylor is true, and (3) that in a separate trial of one of Defendant's accomplices, Easler, testifying for the State, revealed that the Prosecutor had indicated a willingness to speak to the judge, in his behalf, concerning the possibility of his receiving probation.

Assuming Defendant's ability to come forth with such evidence, it, nevertheless did not provide the basis for a new trial by reason of newly discovered evidence.

"To sustain a claim for a new trial based on newly discovered evidence, a petitioner must show (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not merely cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that it could not, by due diligence have been discovered in time for trial; (7) that it is worthy of credit; (8) that it can be produced upon a retrial of the case; and (9) that it will probably produce a different result." *Bradburn v. State,* (1981) Ind., 425 N.E.2d 144, 146. (Citations omitted).

■ Hughes and Taylor testified at Defendant's trial in general accord with the testimony contained in their depositions. Additionally, it could hardly be said to be "newly discovered."

■ The testimony alleged to have been adduced from Early, through an offer to prove, is of no benefit whatever. Apparently Defendant would have us interpret it as corroborative of the testimony of Hughes and Taylor, but we do not ascribe that meaning to it.

■ Finally, Easler's testimony from the subsequent trial did not reveal anything not presented at Defendant's trial, where it was disclosed that Easler was testifying under the terms of a plea agreement with the State, and by virtue of which he anticipated receiving some benefits. The new evidence was a mere detail of the bargain and it's revelation would not have detracted from Easler's already suspect credibility.

### ISSUE III

Defendant asserts that he was entitled to be discharged under Criminal Rule 4(B) for failure to bring him to trial within the time limits of that rule. The record reflects that he filed a motion for an early trial on October 14, 1981. His trial did not commence until February 11, 1982, or fifty (50) days subsequent to the seventy (70) day constraint ordinarily applicable, which expired on December 23, 1982. However, the cause was first set for trial for December 10, 1981, the fifty-seventh (57th) day but was continued on December 9th at Defendant's request, and on December 10th, a pretrial conference was set for December 16th. This conference was continued to January 6th by reason of the absence of defense counsel, and at that conference, the trial was scheduled, without objection, for February 11, 1982.

■ It appears that delays occurred that were chargeable to the defendant; however, we need not make that determination. No objection was made to the trial date setting of February 11th until that day, when the case was called for trial. No objection whatever was made to the scheduling of the pretrial conference of January 6th, a date subsequent to the expiration of the seventy (70) day period. Defendant,

therefore, is deemed to have acquiesced in the setting.

A defendant who desires to enforce his rights under Criminal Rule 4 is required to object, at his first opportunity, if it appears, while there is yet time to rectify the error, that a selected trial setting will not be within the limits fixed by the rule. *Wilburn v. State,* (1982) Ind., 442 N.E.2d 1098, 1102–03; *Little v. State,* (1981) Ind., 415 N.E.2d 44, 46; *State ex rel. Wernke v. Superior Court of Hendricks County,* (1976) 264 Ind. 646, 348 N.E.2d 644; *State ex rel. Wickliffe v. Criminal Court of Marion County,* (1975) 263 Ind. 219, 328 N.E.2d 420.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.