**Robert Walker JACOBS, Jr. and Darrell Wayne Cummins, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 2–1181A369.**

Court of Appeals of Indiana,
Second District.

Oct. 17, 1983.

Leroy K. New, Carmel, for Darrell Wayne Cummins.

William L. Soards, Indianapolis, for Robert Walker Jacobs, Jr.

Linley Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Robert Walker Jacobs (Jacobs) and Darrell Wayne Cummins (Cummins) were jointly tried before a court for burglary and theft. Jacobs was convicted of both counts, while Cummins was convicted of burglary. The charge of theft against Cummins was dismissed. Jacobs received a ten-year prison term on Count I, and a two-year term on Count II: both sentences were to run concurrently. Cummins received a ten-year prison sentence for burglary. The issues before us are:

I. Whether the trial court erred in denying defendants' motion for discharge for failure to bring them to trial within 70 days of their motion for an early trial;

II. Whether the court erred in admitting over objection the victim's in-court identification testimony because allegedly tainted and suggestive pre-trial identification procedures had been used;

III. Whether there was sufficient evidence to sustain Jacobs' burglary conviction. We affirm.

I.

Defendants were taken into custody on February 9, 1981 and bond was set for Jacobs. On April 29, 1981, defendants waived jury trial and requested an early trial. Both defendants agreed to a trial date of June 19, 1981. On June 17, 1981, the court re-set the trial for July 14, 1981

due to a congested calendar. Defendants did not object to this new trial date nor move for discharge.

On July 14, the State orally moved for a continuance due to the unavailability of a material witness. Over defense objection, the court re-scheduled the trial for July 24, 1981. Defendants' motions for reduction of bond were denied.

■ Although Jacobs alone filed a motion on July 17, 1981 for discharge for failure to comply with Criminal Rule 4(B), the court denied such a motion as to both defendants.

Criminal Rule 4(B) provides:

"If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule."

Defendants argue that their constitutional right to a speedy trial as protected by the statutory 70-day rule was violated. Defendants' motion for an early trial filed on April 29, 1981 required that they be brought to trial within 70 calendar days, or no later than July 8, 1981. Here, the original trial date of June 19, 1981 was well within this period. However, due to a congested calendar, the trial court re-scheduled the trial from June 19, 1981 to July 14, 1981. Under the rule, the court may upon its own motion schedule the trial beyond the seventy day period. *Loyd v. State* (1980) Ind., 398 N.E.2d 1260, 1265.[1] Therefore, defendants would not have been entitled to discharge under the seventy-day rule had they been brought to trial on July 14, 1981, despite the fact that this date would have been 76 days from the date of their motion for an early trial.

The real issue is not whether bringing defendants to trial 86 days after their request for early trial violated the 70-day rule, but whether the ten-day delay occasioned by the State's motion for a continuance violated the defendants' speedy trial rights.

The State argues that because of the unavailability of a material witness, the court was authorized under Criminal Rule 4(D) to postpone the trial for as many as 90 days thereafter.[2] While we are cognizant that the absence of a key witness through no fault of the State has been held to be good cause for extending the time for an early trial (*see Gross v. State* (1972) 258 Ind. 46, 278 N.E.2d 583), we need not here decide the applicability and effect of Rule 4(D).

■ To preserve his right to be discharged under Criminal Rule 4, a defendant must object to any alleged delay at the earliest opportunity. *Little v. State* (1981) Ind., 415 N.E.2d 44, 45; *Utterback v. State* (1974) 261 Ind. 685, 310 N.E.2d 552, 553. Defendants here were present and with counsel when the court re-set the trial date from July 14 to July 24 upon the State's motion. The record reveals only that the defendants objected to the continuance, but whether the objection was based specifically on speedy trial grounds is not disclosed. We must assume from the silent record,

---

1. It would appear that the CR 4(B)(1) requirement that a written motion be filed by the prosecutor as a condition for a continuance has been eliminated by *Loyd v. State,* supra.

2. Criminal Rule 4(D) states:
   "If when application is made for discharge of a defendant under this rule, the court be satisfied that there is evidence for the state, which cannot then be had, that reasonable effort has been made to procure the same and there is just ground to believe that such evidence can be had within ninety (90) days, the cause may be continued, and the prisoner remanded or admitted to bail; and if he be not brought to trial by the state within such additional ninety (90) days, he shall then be discharged."

that defendants' objection to the continuance was nothing more than a general one. We may review assertions of error only as reflected by the record. *Smith v. State* (1982) Ind., 432 N.E.2d 1363; *Banks v. State* (1980) Ind., 402 N.E.2d 1213. Therefore, we must consider defendants' assertion of a speedy trial violation to have been raised on July 17, 1981, three days after the court had already granted the continuance and re-set the trial date. It therefore came too late. Had the defendants objected to the July 24 date at the earliest possible opportunity, which was at the time the court set this date, the court might well have insisted that the parties proceed to trial as originally scheduled. *See Banks v. State, supra,* 402 N.E.2d at 1214.

If a defendant sits idly by at a time when the court could yet grant him an earlier trial, and permits the court, without objection, to set a later date, "he will be deemed to have acquiesced therein." *See Little v. State, supra,* 415 N.E.2d at 46. Because the defendants failed to timely object to the delay and move for discharge, they have waived whatever rights they may have had to be discharged under Criminal Rule 4(B).

## II.

Appellants argue that the pre-trial line-up and photographic display were so suggestive as to taint the victim's in-court identification testimony. We disagree.

Suppression of identification evidence at trial is necessary only where the pre-trial procedure utilized was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Popplewell v. State* (1978) 269 Ind. 323, 381 N.E.2d 79, 81; *Bennett v. State* (3d Dist.1981) Ind.App., 416 N.E.2d 1307, 1310. We must consider the totality of the circumstances in determining whether a pre-trial identification procedure has been conducted in an impermissibly suggestive manner. *Bennett v. State, supra,* 416 N.E.2d at 1310.

Shirley Mallernee, the victim, testified that on January 5, 1981, at approximately 8:00 p.m., she discovered the defendants in her home, without her permission. She stated that upon seeing her, the defendants dropped her television and fled. On January 18, 1981, the victim arrived home to find this same television missing.

The victim identified both defendants from a photographic display conducted by Officer Gillespie on January 29, 1981 as the two men whom she found at her home on January 5. However, on May 19, 1981, the victim was unable to pick either defendant from two separate line-ups. Instead, she picked two other individuals. Officer Gillespie corroborated her testimony that she had been under emotional and physical stress at that time and did not feel confident about her ability to identify that right person.

On January 5, prior to the display, the victim had given the police a description of her intruders. At the time of the photo display, the victim was aware that two suspects had been arrested and that a television had been recovered. When she was asked to view the photo array consisting of about 15–20 pictures, all that the police officer conducting the display told her was to view the pictures to see whether she recognized anyone.

Cummins argues that the photographic display was unduly suggestive in that the victim had described one of the intruders as having a short, choppy haircut and resembling David Bowie and that Cummins was the only person among those photographed depicted with short hair.[3] We note that this is not an entirely accurate statement: the victim indicated that there was another picture of someone with short hair although Cummins had the shortest haircut. She further stated that her identification was

---

3. Jacobs joins in Cummins' allegation that the photo display was unduly suggestive. However, since Jacobs had not been the person described by the victim as having a "David Bowie" haircut, and since he was not photographically depicted with short hair, we fail to perceive any merit to his claim that the display was unduly prejudicial to him.

only partially based on the person's haircut, and that among other factors she considered the person's eyes and build.

■■■ Distinctiveness of hair style is not necessarily unconstitutionally suggestive. *Bennett v. State, supra,* 416 N.E.2d at 1310; *Fields v. State* (1975) 263 Ind. 550, 333 N.E.2d 742, 744. Hair style is only one of the factors to be considered in assessing whether a pre-trial identification procedure is unduly suggestive. Here, no question was raised as to other features such as age, hair color, complexion, appearance or stature. We agree with the trial court's evaluation that the photographed individuals were not so dissimilar in features and coloring as to eliminate all subjects except Cummins. *See Allen v. State* (1981) Ind., 428 N.E.2d 1237, 1239. We also observe that although Cummins might have had the shortest haircut, he was not the only individual in the display with a short hair style. Our Supreme Court has found a similar display to not be unduly suggestive. *See Harris v. State* (1981) Ind. 427 N.E.2d 658.

■■■ Appellants also point to the victim's failure to identify the defendants at the line-up as reason for suppressing her in-court identification. The victim's inability to identify defendants on a previous occasion bears only upon the weight to be accorded her in-court identification, and not on its admissibility. *Allen v. State* (1982) Ind., 431 N.E.2d 478, 484.

■■■ In any case, the trial court permissibly found an independent basis for the in-court identification to justify its admission. *White v. State* (1982) Ind., 433 N.E.2d 761, 762. Whether there was sufficient independent basis depends upon the witness' opportunity to observe the perpetrators during the commission of the crime, the witness' capacity for observation, and the circumstances under which this observation was made. *White v. State, supra,* 433 N.E.2d at 762. Here, the victim had a

face-to-face confrontation with the defendants from a distance of only six to eight feet for approximately one minute. She viewed them in the kitchen with the aid of the dining room and basement lights. The victim was able to provide police officers with a detailed description of the intruders on the same evening of the burglary before any of the pre-trial procedures were conducted. Under these circumstances, we hold that the witness' in-court identification was properly admitted.

### III.

■■■ Jacobs contends there was insufficient evidence to support his burglary[4] conviction. In addition to contentions earlier discussed, he claims that there was no proof of any breaking and entering. We may neither reweigh nor judge the credibility of witnesses. We view the evidence in a light most favorable to the verdict, together with the reasonable inferences that flow therefrom. Only if substantial evidence to support the conviction is lacking will we disturb the conviction. *Oatts v. State,* (1982) Ind., 437 N.E.2d 463.

The record reveals that the victim's front door was locked and the back door was open three inches to allow a pet access to her home. The victim testified that she was not acquainted with the defendants nor did she give them permission to enter her home.

■■■ Breaking and entering include an illegal or unauthorized entry, whether by opening an unlocked door or window, *Willard v. State* (1980) Ind., 400 N.E.2d 151, 160; *Harris v. State* (3d Dist.1981) Ind. App., 416 N.E.2d 902, 905, or in this case, by pushing a door which was slightly ajar. Such illegal entry may be proven by circumstantial evidence. *See Willard v. State, supra,* 400 N.E.2d at 160. The trial court could reasonably infer from the defendants'

---

4. I.C. 35–43–2–1 (Burns Code Repl.1979) provides:

"A person who breaks and enters the building or structure of another person, with in-

tent to commit a felony in it, commits burglary, a class C felony."

very presence in the victim's kitchen without her permission that they exerted some force, i.e. pushing the door open, sufficient for them to gain entry. 13 Am.Jur.2d, Burglary § 8. *See McCormick v. State* (2d Dist.1978) 178 Ind.App. 206, 382 N.E.2d 172; *Mullinix v. State* (1st Dist.1976) 168 Ind. App. 178, 342 N.E.2d 677.

We hold that there was sufficient evidence to support Jacobs' conviction.

The judgments are affirmed.

BUCHANAN, C.J., and SHIELDS, J., concur.