Daniel PETRO, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 882S290.

Supreme Court of Indiana.

Nov. 1, 1983.

Robert W. Hammerle, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Daniel Petro, was convicted by a jury of robbery, Ind.Code § 35–42–5–1 (Burns Supp.1983), and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns Supp.1983). He was sentenced to the Indiana Department of Correction for a period of thirty-five years. His direct appeal raises the following issues:

1. Whether the trial court should have excluded state witness Johnson's in-court identification of the defendant as the product of an unnecessarily suggestive pretrial confrontation; and

2. Whether the trial court should have excluded state witnesses Mr. and Mrs. Harper's in-court identification of the defendant as the product of an unnecessarily suggestive pretrial confrontation.

An examination of the record most favorable to the state discloses that on June 2, 1980, at approximately 10:00 p.m., a white male approached Grethel Johnson, a cashier at an Indianapolis drug store, and demanded money. In making his demand the man put his right hand in his shirt producing a bulge. After Johnson gave him all of the bills from the cash register, he ran out of the store. Eight days later the police asked Johnson to come down to the police station to view some photographs. At that time she picked the defendant as the perpetrator of the crime from a photographic array containing several hundred pictures. She also identified him at trial.

Alicia Harper and her husband, Frank, also testified for the state at trial. Mrs. Harper, a customer at the store during the incident, testified that she entered the store immediately before the perpetrator and that defendant "resembles" the man she saw. Mr. Harper, who had been waiting for his wife in his automobile in the parking lot, testified that he saw a man come out of the store, stuff something in his pocket, and run. He identified that man as the defendant at trial.

### I.

Defendant first contends that the trial court's failure to grant his motion to suppress Johnson's in-court identification of him constitutes reversible error. He claims that the in-court identification was a product of an impermissibly suggestive pretrial confrontation.

Generally pretrial identification procedures are impermissibly suggestive only if the totality of the circumstances of prior confrontation were so unnecessarily suggestive and conducive to irreparable mistaken identification as to deprive the defendant of due course of law. *Head v. State,* (1982) Ind., 443 N.E.2d 44; *Gambill v. State,* (1982) Ind., 436 N.E.2d 301.

The record here concerning the pretrial identification reveals that Officer Beasley called Johnson to see if she could come down to police headquarters. He told her that he had a suspect based on her description and wanted to know whether she could identify him from a photographic display. When Johnson arrived at the station Beasley showed her a photographic array con-

taining pictures of approximately five hundred white males and asked whether the perpetrator of the crime was among them. Johnson was aware that the suspect's picture was somewhere in the group. When she came to defendant's picture she stated, "That's him." However, she continued to view the remaining photographs since there were only a few that she had not seen and she "wanted to be sure."

Defendant now argues that the identification procedure was unnecessarily suggestive because Johnson knew the police had a suspect and that his picture would be in the display. He cites *Sawyer v. State,* (1973) 260 Ind. 597, 298 N.E.2d 440, in support of this contention. However, *Sawyer* is clearly distinguishable from the present case. There the police officer conducting the pretrial photographic display told the witness that someone had been arrested and that his picture would be in the display. The police were evidently satisfied that they had apprehended the criminal. We found this unnecessarily suggestive because it could have lead the witness to feel he had an obligation to choose one of the participants in the display. Merely informing a witness that a suspect's picture is in the photographic array, as was done here, simply does not present the danger of suggestivity involved in *Sawyer.* As we stated in *Gambill,* 436 N.E.2d at 303:

> "It is inevitable that a witness may know that the police have a suspect when he is asked to view a 'line up' or limited photographic array. The purpose of such identification procedures is to have such suspicions confirmed or refuted, and the procedures cannot be criticized so long as they are conducive to witness independence."

Defendant also argues that Johnson's decision to continue to look at the pictures even though she had identified him was indicative of such a degree of uncertainty as to render the admission of her identification a denial of due course of law. There is no merit in this argument. We are of the opinion that Johnson's actions were indicative of nothing more than caution and a recognition of the gravity of her decision and gave no cause to suspect an impermissible risk of error.

■ Nevertheless, even if we were to assume, *arguendo,* that the pretrial identification procedure was unnecessarily suggestive, the trial court is correct in refusing to suppress the in-court identification testimony of the witness if the court can properly find that such testimony is supported by a basis independent from the pretrial procedure. *Allen v. State,* (1982) Ind., 439 N.E.2d 615. In determining the independent basis, we will evaluate circumstances such as the length of time the witness viewed the accused, the distance between them, lighting conditions, and the witness's capacity for observation. *Allen,* 439 N.E.2d at 618. In the instant case, the defendant stood only a few feet away from Johnson as he first purchased a package of gum and then demanded money in a well-lighted store. There were no obstructions of the witness's vision and no reason to question her capacity for observation. Under these circumstances, there was sufficient independent basis for the identification and the photographic identification procedure did not result in a substantial likelihood of misidentification. There was no error in admitting the in-court identification.

## II.

Defendant also argues that the pretrial confrontation between the Harpers and himself was unnecessarily suggestive and the trial court should have sustained his objection to their in-court identification. As stated above, regardless of any suggestiveness involved in the pretrial procedure, the trial court is correct in admitting in-court identification testimony of the witness if the court can properly find an independent basis for such identification. *Allen,* 439 N.E.2d at 618.

Although neither Mrs. Harper nor Mr. Harper viewed defendant for a long time, they both saw him long enough to enable them to give the police a matching detailed description of defendant. Mrs. Harper entered the store right before defendant and

apparently was only a few feet away from him. Furthermore, her testimony was only that the defendant merely "resembled" the perpetrator. As for Mr. Harper, though his view was through a windshield and some twenty to twenty-five feet away, the parking lot was amply lighted and he apparently had a good look at defendant. Thus, the trial court could have correctly concluded that the identification by the Harpers each had an independent basis and that the pretrial showup did not result in a substantial likelihood of misidentification. There was no error in admitting either in-court identification.

For the foregoing reasons, there was no reversible error, and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., PRENTICE and PIVAR-NIK, JJ., concur.

DeBRULER, J., concurs in result.