Peter Lawrence BRENDEL, Appellant,

v.

STATE of Indiana, Appellee.

No. 883 S 300.

Supreme Court of Indiana.

March 13, 1984.

Daniel Toomey, Toomey & Woloshansky, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was charged by way of information with Confinement, Rape and Robbery. A jury returned verdicts of guilty on all three counts.

On the evening of March 22, 1982, the victim, J.J., a black woman, was accosted as she was leaving a store in Hammond, Indiana, around 8:45 P.M. A man forced her at knifepoint to open her car door and got inside with her. The man sat in the driver's seat and the victim sat on the passenger's side. He ordered her to give him her money and jewelry. The man then told her he had robbed and killed a "niggerwoman" before when she attempted to flee, and he hoped he would not have to kill her. He then drove to a wooded area and forced the victim to engage in sexual intercourse.

The man then drove her back to Hammond, where he stopped and conferred with other men outside the victim's car. He reentered the vehicle demanding three pieces of identification of the victim. After she gave him her driver's registration application and her college identification, he told her he would give them to someone else to prevent her from later claiming her car had been stolen. He parked the car and walked to a house. The man then returned, drove a while longer, and later released the victim in Hammond.

She walked home and told her fiance, Dixon, that a man had robbed her and stolen her car. Unbeknownst to the victim, Dixon placed a shotgun under the front seat of his car, and then drove her to the police station. There she reported the entire incident, including the rape, to police officers in the presence of Dixon.

She gave the following description to Hammond police officer John Harris: "male, 5'8", slim build, thin-pointed nose, and ... a fairly new moustache." She also stated the man had shoulder length blonde hair. In court she described the man as having shoulder length blonde hair, and said he was wearing blue jeans and a brownish imitation leather jacket. She also testified that appellant had the same facial characteristics as her assailant but that appellant's hair was much shorter.

After leaving the police station, the victim directed Dixon to the location of the rape. While in that area she spotted her car being driven by the man who attacked her earlier. Dixon was unable to catch up with the automobile, but they returned to the police station to report the sighting.

Shortly thereafter, she and Dixon again saw appellant driving her car. Dixon gave chase. The vehicle he was pursuing stopped in the middle of the street, and three men emerged. The victim told Dixon, as the three men came toward the car, that the driver, appellant, was the man who had assailed her. Dixon stepped out of his car wielding the shotgun. Two men ran into nearby yards, but appellant returned to the victim's car he had been driving. Dixon reached the car after appellant was seated behind the steering wheel. He then shot appellant in the chest. Appellant got out of the car and later collapsed in the street. Dixon and the victim stood over appellant looking at him as he lay on the pavement. Dixon then drove to the victim's mother's house to tell her what had transpired, and then took the victim to the hospital, disposing of the shotgun along the way.

Officer James Medwetz responded to the shooting incident. He found appellant sitting on the hood of a car. Appellant was bleeding from a gunshot wound to the chest. Appellant falsely gave his name as one "Jerry Erps," and said he lived at 5615 Alice Street, which was the same street on which appellant resided.

At trial, Sgt. Robert Townsell testified appellant's father gave him the victim's vehicle registration and college identification card. The appellant's father said his daughter had given the items to him, and that she had obtained them from two men who knew appellant.

Appellant first challenges the verdict alleging the identity of the perpetrator was not proven by sufficient evidence of probative value. As in all reviews of the sufficiency of evidence, this Court cannot reweigh evidence or judge the credibility of witnesses. *Frith v. State*, (1975) 263 Ind. 100, 325 N.E.2d 186; *Young v. State*, (1971) 257 Ind. 173, 273 N.E.2d 285. The uncorroborated testimony of the victim is sufficient to identify and convict a defendant. *Smith v. State*, (1982) Ind., 432 N.E.2d 1363; *Clark v. State*, (1982) Ind., 431 N.E.2d 112; *Moore v. State*, (1970) 254 Ind. 23, 256 N.E.2d 907. Factors to be considered in evaluating the victim's ability to identify the perpetrator are: (1) the duration of the victim's view of the accused, (2) the distance between them, (3) lighting conditions, and (4) the witness' capacity for observation. *Petro v. State*, (1983) Ind., 455 N.E.2d 332. In the case at bar, the victim observed appellant for several hours while confined in an automobile with him, in varying lighting conditions as they drove. She demonstrated her capacity for observation by delivering a detailed description of her attacker. Her testimony alone was sufficient to prove appellant was the perpetrator of the crimes charged, notwithstanding the additional circumstantial evidence which corroborated her story.

Appellant secondly argues the trial court erred by refusing to grant a mistrial. During defense counsel's cross-examination of the victim, he repeatedly pressed his point that the victim could not honestly identify appellant as the man who raped and robbed her, and stole her car. He attempted to elicit from her that she was pointing appellant out as her attacker only to protect Dixon. Defense counsel asked, "In other words, the only person you can identify is the person that was on the ground?" Under pressure, she answered, "I identified— When I went to the police station, I was shown pictures. I identified the pictures." She was referring to a photographic identification which had taken place on March 23, 1982, the day after her abduction.

Defense counsel objected that her answer was unresponsive to the question. The trial judge sustained the objection. Defense counsel then moved for a mistrial, saying her answer violated a pretrial stipulation by the prosecutor to not bring out the photographic identification made by the victim. The trial court denied the motion and admonished the jury:

"Any reference made by the witness to a photographic identification of any kind is ordered stricken from the record. And you are admonished to disregard that. It was not responsive to the question propounded. Do you understand that? Any reference made to a photographic line-up, of any kind, is ordered stricken from the record. You are to disregard that. Do you all understand that? All right, you may proceed."

The granting or denial of a mistrial is left to the sound discretion of the trial court. *Brewer v. State*, (1983) Ind., 455 N.E.2d 324; *Tinnin v. State*, (1981) Ind., 416 N.E.2d 116. The decision will be reversed only for a manifest abuse of discretion. *Brewer, supra; Roose v. State*, (1983) Ind., 449 N.E.2d 594. Where the trial judge admonishes the jury to disregard what has occurred at trial, or if other reasonable curative measures are taken, the court's denial of a mistrial is not reversible error. *Tinnin, supra.* We find the court's admonishment was sufficient to cure any possible prejudice to appellant. Moreover, the defendant's attorney brought out the photographic identification, not the prosecutor.

Appellant finally argues the trial court erred by refusing to give his final instruction regarding circumstantial evidence. The instruction of the jury is largely within the trial judge's discretion, and is reviewed only for an abuse of that discretion. *Buttram v. State*, (1978) 269 Ind. 598, 382 N.E.2d 166. Where there is direct evidence sufficient to convict, any instruction on circumstantial evidence may be refused. *Turner v. State*, (1970) 254 Ind. 195, 200, 258 N.E.2d 641, 643; *Wolfe v. State*, (1928) 200 Ind. 557, 159 N.E. 545. Appellant argues that since the direct evi-

dence is insufficient to sustain his conviction, he is then entitled to an instruction as though the State relied on circumstantial evidence alone. There was sufficient direct evidence of appellant's identification from the victim. Therefore, the trial court did not err by refusing appellant's tendered instruction. *Turner, supra.*

The trial court is in all things affirmed.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.