Robin FULTZ, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 4–284A62.

Court of Appeals of Indiana,
Fourth District.

Jan. 23, 1985.

Rehearing Denied March 1, 1985.

Peter Campbell King, Cline, King, Beck, Harrison & Runnels, Columbus, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Appellant Robin Fultz (Fultz) appeals his conviction for engaging in an obscene exhibition, a class A misdemeanor.

Affirmed.

ISSUES

This appeal presents five issues, which, restated and renumbered, are

1. The trial court erred by setting the trial date beyond the 65 day limit established by IND.CODE 35–36–8–1(c)(2),

2. The trial court erred by setting the trial date beyond the 70 day limit established by Ind.Rules of Procedure, Criminal Rule 4(B),

3. The trial court erred by not granting a mistrial when a motion in limine was violated,

4. The trial court erred by overruling Fultz's motion for directed verdict,

5. The trial court erred by reading the final instructions to the jury three times.

FACTS

John Dritt (John) and Julia Dritt (Julia), while sitting in their darkened dining room, observed Fultz as he masturbated while standing in front of his bedroom window. The curtains in Fultz's window were open far enough to see light on each side of his torso as he stood naked performing this act. While so engaged, Fultz looked both up and down the street separating his apartment complex from that of the Dritts. John testified he thought Fultz could see him but he was not certain. Fultz masturbated, left the window for a short time, returned, and began masturbating again.

The police arrested Fultz on March 4, 1983 on charges of engaging in an obscene exhibition. The trial court held its initial hearing on March 9, setting trial for May 18. On May 6, Fultz filed a motion for early trial based on C.R. 4(B) and a discovery motion asking the State be required to reply within 30 days and the court set the omnibus date. On June 15 the Omnibus Hearing was held and trial was set for August 4. Fultz made his first motion to dismiss, based on IC 35–36–8–1(c)(2), on June 20 which was denied June 22. Fultz objected to the trial date, again based on IC 35–36–8–1(c)(2), and petitioned the court to reconsider its denial on June 24. The petition was denied on July 11.

On August 3 Fultz renewed his motion to dismiss, objected to the trial date and again petitioned the court to reconsider its prior denial. On August 4 Fultz's motion and petition were denied, trial was held, and Fultz was convicted.

Other pertinent facts are stated below.

## DISCUSSION AND DECISION

### I. Trial Date Beyond 65 Day Limit

Fultz first contends the trial court erred by setting his trial date on a date other than that set as his omnibus date and in any event beyond the maximum of 65 days, both as required by IC 35–36–8–1. It states:

> Omnibus date.—(a) This subsection applies to persons charged with a felony. A date, known as the omnibus date:
>
> (1) Must be set by the judicial officer at the initial hearing; and
>
> (2) Must be no earlier than forty-five [45] days and no later than seventy-five [75] days after the completion of the initial hearing, unless the prosecuting attorney and the defendant agree to a different date.
>
> (b) The purpose of the omnibus date is to establish a point in time from which various deadlines under this article are established. The court shall direct the clerk to notify the defendant and all counsel of record of the omnibus date.
>
> (c) *The omnibus date for persons charged only with one or more misdemeanors:*
>
> (1) Must be set by the judicial officer at the completion of the initial hearing;
>
> (2) Must be no earlier than thirty [30] days (unless the defendant and the prosecuting attorney agree to an earlier date), and no later than sixty-five [65] days, after the initial hearing; and
>
> (3) *Is the trial date.*
>
> (d) Once the omnibus date is set, it remains the omnibus date for the case until final disposition. (Emphasis supplied.)

Although IC 35–36–8–1(c) requires the trial date to be the same as the omnibus date for misdemeanor charges, Fultz failed to object to the court's setting of a trial date differing from the omnibus date until 40 days after the omnibus hearing was set and five days after it was held.

■ The setting of a trial date which is later in time than the omnibus date does not in itself violate a defendant's right to a speedy trial, as this right is safeguarded by the requirements of C.R. 4(B) as Fultz recognized in filing his speedy trial motion discussed in Issue II below. Accordingly, Fultz's contention is based entirely on the argument IC 35–36–8–1(c)(3) provides a statutory right which was violated here.

As the State points out, apparently there are no Indiana cases determining whether a violation of IC 35–36–8–1(c)(3) must result in the defendant's discharge, nor whether a defendant may waive enforcement of the provision. However, we agree with the State's argument, citing analogous situations, enforcement of IC 35–36–8–1(c)(3) has been waived in this case.

■ The statute is obviously analogous to our speedy trial rules (indeed, Fultz contends the statute is intended as a speedy trial rule). As we discuss in Issue II, *infra*, a speedy trial contention is waived if not raised promptly when the trial date is set outside the rule's 70 day limit. *See, e.g., Jacobs v. State*, (1983) Ind.App., 454 N.E.2d 894, 898. Similarly, in several cases our court has held a defendant waives enforcement of C.R. 11 and IC 35–38–1–2 (formerly IC 35–4.1–4–2), which requires the trial court to set a sentencing date within 30 days of entering a conviction, if he does not promptly object to a sentencing date set beyond the 30 day limit. *See, e.g., Stout v. State*, (1974) 262 Ind. 538, 542, 319 N.E.2d 123, 125; *Murphy v. State*, (1983) Ind.App., 447 N.E.2d 1148, 1149–50.

■ In light of these authorities we hold the procedural requirements of IC 35–36–8–1(c) are waived when a defendant has the opportunity to object to their violation, and does not. Fultz could have objected as soon as the trial court set the date for his omnibus hearing without also setting the trial date, or at the very least during the omnibus hearing when the trial date was set for August 4. He did not and, accordingly, the contention is waived.

### II. Trial Date Beyond 70 Day Limit

■ Fultz next contends his right to speedy trial was violated by the court's

setting of trial beyond the 70 day limit established by C.R. 4(B). Any error in this regard is waived, however, by Fultz's failure to object to the trial date on the basis of C.R. 4(B). Our courts have consistently held failure to object to a trial date at the earliest opportunity waives any claim of error in that regard. *Randall v. State*, (1983) Ind., 455 N.E.2d 916, 922; *Sumner v. State*, (1983) Ind., 453 N.E.2d 203, 207; *Jacobs, supra*, 454 N.E.2d at 897. Fultz lists three motions to dismiss which he filed as preserving this error. However, all of these motions were based on IC 35–36–8–2(c) and made no mention of C.R. 4(B). We have previously held where an objection to a trial date is not disclosed as being specifically based on C.R. 4(B) speedy trial grounds, it is not sufficient to protect any alleged error on that basis. *Id.*, 454 N.E.2d 897.

■ Further, even if we assumed arguendo Fultz's motion to dismiss was sufficient to notify the court of his speedy trial contention, the motion would fail as not being timely. The first motion was filed 5 days after the trial date was set. We previously stated in *Jacobs, supra*, 454 N.E.2d at 898 an objection filed three days after trial date was set came too late and waived any error.

### III. Mistrial

The trial judge committed reversible error when he refused to order a mistrial and instead admonished the jury upon a violation of an in limine order, Fultz opines. We disagree.

■ The granting or denial of a mistrial is left to the sound discretion of the trial court. *Brendel v. State*, (1984) Ind., 460 N.E.2d 919, 921; *White v. State*, (1984) Ind., 460 N.E.2d 132, 135; *Gaines v. State*, (1983) Ind.App., 456 N.E.2d 1058, 1060. The decision will be reversed only for a manifest abuse of discretion. *Brendel*, 460 N.E.2d at 921; *White*, 460 N.E.2d at 135. Further, when the trial judge admonishes the jury to disregard what has happened at trial, the court's denial of a mistrial generally is not reversible error. *Brendel*, 460

N.E.2d at 921; *Beal v. State*, (1983) Ind., 453 N.E.2d 190, 193.

In this case the trial court had granted Fultz's motion in limine to exclude the State and all witnesses from making any reference to Count II charges pending against Fultz for window peeping or from any facts concerning Count II. The acts alleged in Count II involved an incident alleged to have occurred February 20. At trial the State questioned detective Joel Blumlo of the Columbus Police Department concerning his investigation of the events. The following took place:

Q. "Alright, did the, what was the nature of the complaint you received on February 17th?

A. "Nature of the complaint was window peeping and prowling going on —"

Fultz objected immediately to this testimony and moved for mistrial. The trial judge denied this motion on the basis such testimony did not violate the order in limine in that the testimony referred only to events of February 17th and was not connected to facts concerning Count II. Further, the trial judge admonished the jury as to the testimony in question and ordered it stricken from the record.

■ Since the detective did not name Fultz in his testimony, the testimony did not specifically violate the order in limine, and the trial judge promptly admonished the jury, the denial of the motion for mistrial was not error.

### IV. Directed Verdict

■ A directed verdict for acquittal will be granted only if there is an absence of evidence upon an essential element of the charged crime or if the evidence supports only an inference in favor of the defendant. *Paige v. State*, (1983) Ind., 441 N.E.2d 438, 440; *Harris v. State*, (1981) Ind., 425 N.E.2d 154, 155. It is not our province to weigh the evidence or determine the credibility of witnesses. We review the evidence to determine if any reasonable inference may be drawn to support

the verdict of the jury. *Marbley v. State,* (1984) Ind., 461 N.E.2d 1102, 1110; *Harris,* 425 N.E.2d at 155. If there is substantial evidence of probative value on each element of the crime charged, we must affirm. *Hossman v. State,* (1984) Ind., 467 N.E.2d 416, 418; *Killian v. State,* (1984) Ind.App., 467 N.E.2d 1265, 1269; *Jackson v. State,* (1984) Ind.App., 469 N.E.2d 753, 756.

The elements of the charged offense are:[1]

1. That the defendant,
2. knowingly or intentionally,
3. engaged in,
4. an obscene performance.

Additionally, a performance is defined by the statute as being "... any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated or live, performed before an audience of one (1) or more persons." Fultz posits the Dritts did not constitute an audience thus the performance element was not met. This argument is specious. There was uncontroverted testimony by both John and Julia they watched Fultz twice stand in front of a window in a lighted room and masturbate. While the statute does not provide us with a definition of "audience", it is a common term which does not have a definition unique to the law. *Webster's Third New International Dictionary,* (G. & M. Merriam Co.1976) defines audience as, "... 3b: a group or assembly of spectators ..." It further defines spectator as, "1: one that looks on or beholds ...." The testimony is clear John and Julia both looked on as Fultz masturbated.

Fultz further contends there was no substantive evidence he knowingly or intentionally performed the act before an audience. It is true there is no direct proof of his intent; however, his actions while standing in front of a large window

in a lighted room at night in one apartment of a multi-family apartment complex and facing another multi-family apartment complex are enough for a jury to reasonably infer his intention to be observed. Moreover, John testified he believed Fultz could see the Dritts from his window. Because intent is a mental state, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances. *Shields v. State,* (1983) Ind. App., 456 N.E.2d 1033, 1039. The inference Fultz intentionally performed this act is permissible from the record here.

### V. Final Instructions

Fultz finally contends the trial judge erred by reading final instructions to the jury three times. We find no error.

At trial the jury requested a second reading of the final instructions after deliberating for one hour and forty minutes. After another hour and fifteen minutes the jury requested a third reading of the instructions indicating they needed the reading to reach their decision. After the instructions were read for the third time the jury returned to the jury room and reached their verdict a short time later. The trial judge read the same instructions, in their entirety, on each occasion. No additional instructions were given, and none were deleted. Each subsequent reading was given only after being requested by the jury. After the third reading, Fultz objected the third reading constituted an "Allen charge" and thus was improper.

The "Allen charge" is a supplemental instruction suggesting to an apparently deadlocked jury it should reach a verdict, or a similar admonishment which might encourage the jury to unduly compromise. *See, Lewis v. State,* (1981) Ind., 424 N.E.2d 107, 109. Our supreme court thoroughly discussed the history and devel-

---

1. IC 35–30–10.1–3 defines engaging in an obscene performance as:

   "A person who knowingly or intentionally engages or participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a class A misdemeanor. However, the offense is a class D felony if the obscene performance depicts or describes sexual conduct involving any person who is or appears to be under sixteen (16) years of age."

opment of the Allen charge in our State in *Lewis*, and stated there,

> The proper procedure is for the court to call the jury back into open court in the presence of all of the parties and their counsel, if they desire to be there, and to reread all instructions given to them prior to their deliberations, without emphasis on any of them and without further comment. This procedure will give the jury the aid necessary for them to continue their deliberations without compounding potential problems as the giving of an Allen-type instruction has done.

*Id.*, 424 N.E.2d at 111. The *Lewis* procedure has been consistently applied as the proper test. *See, e.g., Cabell v. State*, (1984) Ind., 461 N.E.2d 1101, 1102; *Reynolds v. State*, (1984) Ind., 460 N.E.2d 506, 508; *Alexander v. State*, (1983) Ind., 449 N.E.2d 1068, 1073; *Long v. State*, (1983) Ind.App., 448 N.E.2d 1103, 1105.

The trial judge followed *Lewis* precisely in this case. Fultz argues a third reading per se changes the original instructions into an Allen charge; however, he cites no authority for this position and we are aware of none. While, as Fultz posits, a continual rereading of the original instructions could rise to the level of an Allen charge at some point in time, a decision as to when the transition occurs is not necessary here. Where the jury requests a reading of the instructions for the third time to assist it in its deliberation, the jury makes no indication it is deadlocked but rather indicates it will be able to reach a decision with the reading, and where the judge has followed the *Lewis* procedure, there is no error.

Affirmed.

MILLER, P.J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I dissent.

There is no evidence from which one could conclude beyond a reasonable doubt that the defendant knew he had an audience of one (1) or more persons or that he intended for anyone to observe him.

I would reverse and discharge the defendant.