**Luke RIFFEL, Defendant–Appellant,**

**v.**

**STATE of Indiana, Plaintiff–Appellee.**

**No. 55A01–8908–CR–302.**

Court of Appeals of Indiana,
First District.

Feb. 14, 1990.

Bruce A. MacTavish, Pardieck & Gill, Seymour, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Luke Riffel appeals his conviction of Count I, Neglect of a Dependent;[1] Count II, Conducting a Performance Harmful to a Minor;[2] Count III, Obscene Performance;[3] and Count IV, Obscene Performance,[4] contending the evidence is insufficient to sustain the convictions because it consists only of repudiated *Patterson*[5] statements. We affirm as to Count I and reverse as to Counts II, III, and IV.

## FACTS

Riffel was charged in a four count information as follows:

"I. Richard Puryear says: Luke Riffel on or about the month of August 1988 at and in the County of Morgan and State of Indiana, having the care, custody and control of [M.R.], age five (5), a dependent, did knowingly place [M.R.], his dependent, in a situation endangering his mental health, to-wit: allowed Larry Max Cramer, age 35, to demonstrate receiving oral sex from an anatomically correct nude lifesize adult female doll, in front of [M.R.], also in the presence of Luke Riffel, Tina Cramer and Sharon Benton, all of whom were adults, Luke Riffel then telling [M.R.] to put his penis in the doll's mouth.

"II. Richard Puryear says: Luke Riffel on or about the month of August, 1988, at and in the County of Morgan and State of Indiana, did knowingly engage in a performance that is harmful to minors, to-wit: engaged in sexual intercourse of Tina Cramer, before [M.R.], age five (5), whose date of birth is April 16, 1983, and who is the natural son of Luke Riffel.

"III. Richard Puryear says: Luke Riffel on or about the month of August, 1988, at and in the County of Morgan and State of Indiana, did knowingly engage in an obscene performance, to-wit: did perform sexual intercourse with Tina Cramer in front of his natural son, [M.R.], age five (5), after having instructed his son to watch the sex act.

"IV. Richard Puryear says: Luke Riffel on or about the month of August, 1988, at and in the County of Morgan and State of Indiana, did knowingly engage in an obscene performance, to-wit: stuck his finger in Tina Cramer's vagina and then placed his finger before the nose of [M.R.], age five (5), and told [M.R.] to smell his finger."

The alleged incidents took place during Riffel's visitation period with M.R. at the

---

1. Ind.Code 35–46–1–4(a)(1), which, in relevant part, provides:
"Sec. 4. (a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
(1) places the dependent in a situation that may endanger his life or health;
commits neglect of a dependent, a Class D felony.".

2. Ind.Code 35–49–3–3(4).

3. Ind.Code 35–49–3–2.

4. Ind.Code 35–49–3–2.

5. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482.

camping trailer residence of Riffel. Except for that part of the charge in Count I concerning the use of the doll by Cramer, the only evidence supporting the charges were the so-called *Patterson* statements of M.R. made to his mother, police, social workers, and a physician.

As to Count I, according to these statements, Cramer had a life-size inflatable doll equipped with a vibrator type mechanism in its mouth. When a penis was inserted into the doll's mouth and the mechanism activated, the doll simulated fellatio. M.R.'s statements related that Cramer, in the presence of M.R., Riffel, and Riffel's girl friend, Tina, who is Cramer's sister, and Cramer's girl friend Sharon, demonstrated the use of the doll. Thereafter, M.R. was placed on the doll and instructed to place his penis into the doll's mouth. The mechanism then was activated and everyone present laughed. At trial, M.R. testified as to Cramer's use of the doll, but denied the remainder of the incident. M.R. did, however, tell the police where Cramer kept the doll and certain other pornographic materials. Pursuant to a search warrant, the police recovered the doll from the location indicated by M.R., and it was introduced in evidence at the trial.

Evidence at trial further revealed that after this alleged incident, M.R. was found to be infected with chlamydia, a sexually transmitted disease, and that Cramer had chlamydia. Medical evidence was presented that M.R. could have gotten chlamydia from the doll if it had been used shortly before by a person infected with chlamydia.

As to Counts II and III, the only evidence supporting them are M.R.'s out-of-court statements that Riffel and Tina engaged in sexual intercourse in his presence and that Riffel directed M.R. to watch.[6] At trial, M.R. repudiated these statements, denied making them, and denied that any such event occurred.

Because we believe the acts charged in Count IV, even if proved, do not constitute the crime charged, we find it unnecessary to relate the evidence pertaining to that charge.

## ISSUE

The only issue presented for our determination is whether the evidence is sufficient to sustain the convictions.

## DISCUSSION AND DECISION

In *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, our supreme court held that prior out-of-court statements of a witness could be used as substantive evidence where the declarant was present in court and available for cross-examination. This rule later was explained in *Watkins v. State* (1983), Ind., 446 N.E.2d 949, 959–60:

> "The Patterson exception to the hearsay rule is justifiable because it permits the admission, on occasions, of major testimonial evidence of guilt that otherwise would be lost simply because it had not been subject to cross examination at the time of its utterance, notwithstanding that it was subject to cross examination at trial. *Stone v. State,* (1978), 268 Ind. 672, 377 N.E.2d 1372. Its misapplication and abuse have been noted in *Samuels v. State,* (1978), 267 Ind. 676, 678–79, 372 N.E.2d 1186, 1187, ('To the extent that it has been used to support the admission of out-of-court statements as a mere substitute for available in-court testimony, it has been misapplied.') and in *Carter v. State,* (1980) Ind.App., 412 N.E.2d 825, 828–31, ('We conclude that the trial court erred in permitting Officer Crawford to relate Irey Hughes' post-arrest statements before Hughes acknowledged making the statements.') and ('under our interpretation of the Patterson rule, denied or unrecalled statements are inadmissible as *substantive evidence.*') (Emphasis added.) It was correctly observed in *D.H. v. J.H.,* (1981) Ind.App., 418 N.E.2d 286, 294–95:
>
> > 'Briefly stated, the Patterson rule is that a prior statement of a witness is admissible, not only for purposes of

---

6. Among M.R.'s out-of-court statements was that his father "screws in front of me." Questioned as to what "screws" meant, M.R. was able to describe the act of sexual intercourse, and, with the aid of anatomically correct dolls, to demonstrate how that act is performed.

impeachment, but also as substantive evidence, provided the out-of-court asserter is present as trial for cross-examination.' (Citations omitted, original emphasis.)

'However, we do not believe the rule to be as broad as might be indicated in that definition, if by this definition nothing more is required than the mere presence of the out-of-court declarant. We have reviewed a number of cases wherein the Patterson rule was relied upon and find the common factor in those cases was that the out-of-court declarant had in fact testified and been subjected to cross-examination.' "

The court in *Watkins* went on to say that when the out-of-court declarant denies having made the statement or denies having any memory of having done so, the statement is not admissible as substantive evidence because it cannot be cross-examined. 446 N.E.2d at 960. Riffel relies upon this statement as authority for his position that the evidence is insufficient. However, M.R. did admit that he gave the statements, and one of them was video-taped and the videotape was played at trial. M.R. further said he told the truth to Dr. Lake about what happened with the doll.[7] However, at trial he repudiated the statements. In this regard, our supreme court's further observation in *Watkins:*

"We have heretofore held that *Patterson* exception statements were admissible as substantive evidence, notwithstanding that the declarant repudiated them and that the reason given, during the repudiation, for having made them initially went only to the credibility of the conflicting statements. *Cook v. State*, (1978), 269 Ind. 227, 228–29, 379 N.E.2d 965, 966; *Moten v. State*, (1978), 269 Ind. 309, 312–13, 380 N.E.2d 544, 546; *Foor v. State*, (1977), 172 Ind.App. 618, 622–23, 360 N.E.2d 1273, 1275,"

is noteworthy.

The subject of repudiated *Patterson* statements again was addressed by our

supreme court in *Peckinpaugh v. State* (1983), Ind., 447 N.E.2d 576, 580, where the court stated:

"Although we reject Defendant's claim of insufficient evidence, we hasten to add that, because a criminal conviction could not be sustained if dependent upon repudiated hearsay evidence admitted under the exception of *Patterson v. State, supra* standing alone, the State must exercise caution when utilizing such evidence. When *Patterson* evidence which has been repudiated in court by the declarant is relied upon to establish any essential allegation of the charge, there must also be present substantial evidence of probative value from which the trier of fact may reasonably infer that the out of court statements are credible. *Watkins v. State, supra.* That standard was met in this case."

Riffel stresses the statement in *Peckinpaugh* that a criminal conviction dependent upon repudiated *Patterson* statements cannot be sustained, and we accept that as being the law. However, Riffel fails to recognize that the *Peckinpaugh* court found sufficient corroborating evidence, and that the *Watkins* court upheld the conviction in the face of a sufficiency challenge. Likewise, we find sufficient corroboration and uphold the convictions as to Count I.

■ Regarding Count I, M.R. testified in court as to Cramer's demonstration of the use of the doll. The police, executing a search warrant, found the doll exactly where M.R. said Cramer kept it. Cramer was infected with chlamydia. M.R. contracted chlamydia which a physician testified could have resulted from contact with the doll shortly after its use by someone infected with that disease. M.R. testified as to the presence of Riffel, Cramer, Tina, and Cramer's girl friend. All this sufficiently corroborated M.R.'s out-of-court statements and rendered them admissible as substantive evidence. The trier of fact reasonably could have found M.R.'s out-of-

7. M.R. testified and was available for cross-examination. However, Riffel's counsel elected · not to cross-examine.

court statements credible. Further, Dr. Lake testified the conduct involved was harmful to M.R.'s mental health. This evidence was sufficient to sustain the conviction on Count I.

■ The charges in Counts II and III, however, rest entirely upon the repudiated *Patterson* statements of M.R. We might speculate as to the source of five year old M.R.'s knowledge of the mechanics of sexual intercourse; however, we cannot transform mere speculation into corroboration. Accordingly, the evidence is insufficient to sustain the convictions on Counts II and III. *Peckinpaugh.*

Although Riffel does not contend the facts alleged in Count IV do not constitute an obscene performance, focusing his argument instead upon the sufficiency question, we, *sua sponte*, raise that issue. It is fundamental error to convict a defendant of a crime not charged or upon evidence which does not establish the crime charged even if a different crime is established. *Meredith v. State* (1982), Ind.App., 439 N.E.2d 204, 206–08.

■ The statutes pertaining to the offense of obscene performance are the following:

"**Ind.Code 35–49–3–2. Activities related to obscene performance.**—A person who knowingly or intentionally engages in, participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a class A misdemeanor. However, the offense is a class D felony if the obscene performance depicts or describes sexual conduct involving any person who is or appears to be under sixteen [16] years of age.

"**Ind.Code 35–49–1–7. Performance.**—'Performance' means any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons.

"**Ind.Code 35–49–2–1. Obscene matter or performance.**—A matter or performance is obscene for purposes of this article if:

(1) The average person, applying contemporary community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex;

(2) The matter or performance depicts or describes, in a patently offensive way, sexual conduct; and

(3) The matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value."

Ever mindful that criminal statutes are to be construed strictly against the State and may not be enlarged by construction, implication, or intendment beyond the fair meaning of the language used, *Gore v. State* (1983), Ind.App., 456 N.E.2d 1030, it is clear to us that the acts charged in Count IV, even if proven beyond a reasonable doubt, do not constitute the crime of obscene performance as charged n the preceding statutes. In construing a statute, our foremost objective is to determine and effect the intent of the legislature. *Id.* In our opinion, the purpose of those statutes, and the legislative intent revealed by the language used, is to prohibit obscene performances of a theatrical, show, or entertainment nature, performed live, or on film or video, before an audience, and not to ban an act in a private setting, no matter how disgusting, such as the act charged against Riffel in Count IV. Riffel's conduct may or may not have constituted some other offense, a matter we need not decide. The crucial issue is that it did not constitute an obscene performance as defined by Indiana statutes. We may not expand the statutory definition. *Id.*

We are not unmindful of the decision of this court in *Fultz v. State* (1985), Ind. App., 473 N.E.2d 624, relied upon by the dissenting opinion. However, that case is distinguishable factually from this case. In *Fultz*, the defendant stood naked before a window in a lighted room and masturbated on two occasions. Fultz performed those acts in plain view visible to anyone in the neighborhood, and, in fact, he was observed by neighbors across the street. The public nature of the acts committed by Fultz clearly are different from the private

setting of the act charged against Riffel in Count VI. Without considering whether the acts in *Fultz* constitute a violation of the statutes here involved, or the predecessor statute which the *Fultz* court held was violated, the factual differentiation renders *Fultz* unpersuasive as authority in this case. Therefore, we reject the view of the dissent that *Fultz* is controlling. Assuming *Fultz* was correctly decided on its peculiar facts, it is inapplicable to the facts of this case.

Judgment affirmed as to Count I and reversed as to Counts II, III, and IV, and the trial court is directed to enter judgments of acquittal on Counts II, III and IV.

BAKER, J., concurs.

HOFFMAN, P.J., concurs and dissents with separate opinion.

HOFFMAN, Presiding Judge, concurring and dissenting.

I concur with the majority's holding as to Counts I, II and III, but respectfully dissent to the holding as to Count IV.

The acts charged in Count IV, if proven beyond a reasonable doubt, do constitute the crime of obscene performance.

The applicable statute reads, in relevant part:

"A person who knowingly or intentionally engages in ... any obscene performance commits a Class A misdemeanor...."

IND.CODE § 35–49–3–2 (1988 Ed.).

There is no requirement in this statute that the obscene performance take place in "public". It applies to those obscene performances in "private settings" as well.

The definition of "performance" reads as follows:

" 'Performance' means any play, motion picture, dance, or *other exhibition* or presentation, whether pictured, animated, *or live, performed before an audience of one 1 or more persons.*" [Emphasis added.].

IND.CODE § 35–49–1–7 (1988 Ed.).

Obscene performances are not restricted by Indiana statutes to only those performances of a theatrical, show, or entertainment nature.

The Court in *Fultz v. State* (1985), Ind. App., 473 N.E.2d 624, defined "audience". The defendant in *Fultz* acted in an obscene manner in his home in front of his window. The audience was two neighbors who inadvertently observed defendant's behavior. The trial court stated that the term "audience" is a common term which does not have a definition unique to law. 473 N.E.2d at 629. *Webster's Third New International Dictionary*, (G. & M. Merriam Co.1976) defines audience as "... 3b: a group or assembly of spectators...." It further defines spectator as "1: *one that looks on or beholds....*" [Emphasis added.]. *Id.*

It is clear that the defendant's sexual acts with his girlfriend constituted an obscene performance. It is also clear that the victim, defendant's five-year-old son, constituted an audience to this obscene performance. There was evidence that the victim was ordered by the defendant to observe these acts. It does not matter that this performance took place in defendant's home since there is no statutory requirement that the acts be done publicly.

Nor does this Court face a right to privacy violation by applying the statute to those obscene performances done in private settings. The Florida Supreme Court in *Chesebrough v. State* (1971), Fla., 255 So.2d 675, was confronted with a right to privacy argument by a husband and wife who were arrested for having sexual relations in the presence of a child in their home. Defendants alleged, in part, that the statute prohibiting such conduct before a child, violated their right to privacy. The court held that the defendants' behavior was not protected by the Constitution. The "right to privacy does not contemplate the privilege of engaging in sexual intercourse at such times and places as the parties may desire and in the presence of others." *Id.* at 679.

If the legislature had intended that the obscene performance statute not apply to those obscene performances done in a private setting, it could have so limited the

statute. Likewise, the legislature could have confined the statute to only those obscene performances of a theatrical, show, or entertainment nature. However, the legislature did not restrict the statute in these ways and thus, it applies to obscene performances in private settings. The defendant's acts constituted the crime of obscene performance.

The trial court should be affirmed as to Count IV.