Rose A. LOW, Appellant–
Defendant Below,

v.

STATE of Indiana, Appellee–
Plaintiff Below.

No. 29A04–9106–CR–197 [1].

Court of Appeals of Indiana,
Third District.

Nov. 14, 1991.

Michael R. Burrow, Wolf & Burrow, Lyn W. O'Neal, Greenfield, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Rose A. Low appeals her convictions for obscene performance, a Class A misde-

1. This case was diverted to this office by order of the Chief Judge.

meanor, and refusing to assist a law enforcement officer, a Class B misdemeanor. She raises three issues for our review, which we restate as the following two:

I. Whether the trial court erred in denying her motion to dismiss the charge of obscene performance at the close of the state's evidence.

II. Whether the evidence was sufficient to sustain her conviction for refusing to assist an officer.

We affirm her conviction for refusing to assist a law enforcement officer but reverse her conviction for obscene performance.

The evidence most favorable to the State reveals that in the spring of 1990, members of the Carmel Police Department were engaged in the investigation of suspected prostitution activity in Hamilton County. As part of that investigation, the Department rented two adjoining rooms in the Courtyard Marriott located on 103rd Street and U.S. 31 in Carmel. Working undercover, Officer Roger Conn telephoned the "Yes, We Do" escort service from room 403 of the hotel and requested an escort. Officer Conn, posing as "Roger Casey," met Rose Low and her driver later that evening. Low introduced herself as "Erin." Her driver checked the room to make sure there was nobody else there, then had "Roger" sign a "Service Agreement" which stated that the services did not include sexual activity, massage, or lewd or obscene performances. The driver then left Low with Officer Conn.

After the driver left, Officer Conn and Low engaged in small talk and he eventually asked Low what she "did." Low explained to Officer Conn that she would dance for him, that she could do a "role theme play," or that they could engage in "adult conversation." The discussion eventually progressed to an explanation of the various "tipping sessions" which were available as part of the services which Low provided. Low indicated that for an additional $125, she would engage in a "fantasy session" where she would dance semi-nude, model semi-nude, or do a "bed dance." Conn gave her $100 and she changed into a

G-string, small top, and thigh-high nylon stockings and performed a "bed dance," whereby the officer laid on the bed in his underwear while she danced over him. In the course of the dance, Low exposed her breasts to the officer.

After the bed dance, Conn asked Low what else she did, and she described a "finger fantasy." Officer Conn gave her $200, and she performed the "finger fantasy," which involved Officer Conn, while nude, watching her masturbate. Officer Conn testified that during the "finger fantasy," Low inserted her finger into her vagina. Shortly thereafter, Officer Conn gave a code phrase ("you have beautiful eyes") which tipped the officers listening in the adjoining room to come in and make the arrest.

At the knock on the door, Low ran into the bathroom and dressed. Shortly after the knock, the telephone rang. Officer Conn admitted the police officers into the room and then answered the phone. The escort service was on the phone, checking on Low. The police cautioned Low not to alert the caller that police officers were present. Low talked to the caller, with her end of the conversation consisting of monosyllabic answers. A driver never came to pick her up.

At trial, the police officers testified that escorts often used codes over the phone to tell the services whether they were safe. The officers speculated that Low had used a code to tip the service off that she had been apprehended by the police.

Low was charged with prostitution, obscene performance, and refusing to assist a law enforcement officer. She was acquitted on the first charge, but was convicted of the others and sentenced to one year incarceration, all but weekends suspended, and one year probation. She appeals.

## I.

### Obscene Performance

At the close of the State's case in chief, Low moved for dismissal of the obscene performance count, arguing that the State had failed to make a prima facie case show-

ing an obscene performance. The trial court denied the motion to dismiss.

■ Low was convicted of violation of Indiana Code 35–49–3–2 (1988), which provides in relevant part:

A person who knowingly or intentionally engages in, participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a Class A misdemeanor.

Low does not contend on appeal that her conduct was not obscene; rather, she argues that she was not engaging in a "performance" within the meaning of the statute. "Performance" is defined in Indiana Code 35–49–1–7 (1988):

"Performance" means any play, motion picture, dance or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons.

This definition applies to the obscene performance statute. IC 35–49–1–1 (1988).

Low points to this court's decision in *Riffel v. State* (1990), Ind.App., 549 N.E.2d 1084, *transfer denied,* in support of her argument that the conduct charged did not constitute an obscene performance. In *Riffel,* the defendant, while in his home, inserted his finger in his girlfriend's vagina and then placed his finger under his five-year-old son's nose, instructing him to smell it. The court found that this conduct did not constitute an obscene performance:

Ever mindful that criminal statutes are to be construed strictly against the State and may not be enlarged by construction, implication, or intendment beyond the fair meaning of the language used, *Gore v. State* (1983), Ind.App., 456 N.E.2d 1030, it is clear to us that the acts charged in Count IV, even if proven beyond a reasonable doubt, do not constitute the crime of obscene performance as charged [i]n the preceding statutes. In construing a statute, our foremost objective is to determine and effect the intent of the legislature. *Id.* In our opinion, the purpose of those statutes, and the

legislative intent revealed by the language used, is to prohibit obscene performances of a theatrical, show, or entertainment nature, performed live, or on film or video, before an audience, *and not to ban an act in a private setting,* no matter how disgusting, such as the act charged against Riffel in Count IV.

*Riffel, supra,* at 1088 (emphasis added). Since the conduct alleged here occurred in a private setting, Low argues that it did not violate the statute.

The State argues in response that it is the nature of the activity, not the setting, which controls the criminality of the conduct under the statute. It argues that because the conduct was performed for money, it is distinguishable from the conduct in *Riffel.* In addition, the State argues that the conduct need not be theatrical to be an obscene performance, as simple exhibitionism was found sufficient in *Fultz v. State* (1985), Ind.App., 473 N.E.2d 624, *transfer denied.*

In *Fultz,* the defendant masturbated while standing in the lighted window of his apartment, while others in the apartment complex could see him. *Fultz* was distinguished in *Riffel* due to the public nature of the acts performed. Like the court in *Riffel,* we do not find the *Fultz* decision persuasive in determining the criminality of the conduct charged in this case.

■ Nor do we find that the *Riffel* court determined the nature of the conduct, rather than the forum, to be controlling. The court's decision was clearly based upon the fact that Riffel's conduct occurred in a private forum, rather than a public forum. Upon that basis, the court found *Fultz* to be distinguishable.

■ We also do not find it persuasive that the acts here were performed for money. The State's argument to that effect finds no support in the language of the statute. The conduct charged in the information might well be proscribed by the statute if performed free of charge in a public forum. On the other hand, if such

conduct was performed for money, it may be brought within the purview of other statutes, even if performed in a private forum.[2] Simply stated, the obscene performance statute does not seek to prevent the performance of sexual acts for money. That purpose is served elsewhere in the criminal code. The purpose of the statute is to prosecute "obscene performances" as those acts are defined by the statute, whether or not the acts are performed in return for money.

■ Low correctly points out that if the statute is not narrowly construed, conduct similar to the acts in this case occurring between consenting married adults would fall within the purview of the statute.[3] We may give a narrow construction to statutes to save them from nullification if the construction does not establish a new or different policy basis and is consistent with legislative intent. *State v. Downey* (1985), Ind., 476 N.E.2d 121, 123, *reh'g denied.* The construction of the obscene performance statute in *Riffel* is consistent with the clear intent of the legislature. To hold different-

ly in the present case might allow the extension of the proscriptive reach of the statute to conduct which is constitutionally protected. *Eisenstadt v. Baird* (1972), 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349; *Stanley v. Georgia* (1969), 394 U.S. 557, 568, 89 S.Ct. 1243, 1249–1250, 22 L.Ed.2d 542; *Griswold v. Connecticut* (1965) 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510.[4]

■ We hold that the trial court erred in denying Low's motion to dismiss, as conduct such as that charged and proved by the State, when it occurs in a private setting, does not violate Indiana Code 35–49–3–2. We therefore reverse Low's conviction for obscene performance.

## II.

### *Refusal to Assist an Officer*

Low contends that the evidence was insufficient to support her conviction for refusal to assist an officer. In reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. We look to the evidence

2. Indiana Code 35–45–4–2 (1988) states:
   A person who knowingly or intentionally:
   (1) performs, or offers or agrees to perform ... deviate sexual conduct ... for money or other property commits prostitution, a Class A misdemeanor. However, the offense is a Class D felony if the person has two (2) prior convictions under this section.
   "Deviate sexual conduct" is defined to include "the penetration of the sex organ or anus of a person by an object." IC 35–41–1–9 (1988). A finger is an "object" within the meaning of the statute. *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 126.
   Low was charged with violating the above statutes, but the jury acquitted her of the charges. This court has recently held that this statute was not in conflict with the obscene performance statute. *Webb v. State* (1991), Ind. App., 575 N.E.2d 1066, 1068. Under strikingly similar facts, the court upheld a conviction under the prostitution statute where the defendant inserted a flesh-colored penis-shaped object into her anus during a "bed dance" in exchange for $50 paid by an undercover police officer. The conduct occurred in a hotel room in downtown Indianapolis.

3. The State argues that Low may not raise an overbreadth argument here, as the overbreadth doctrine has been applied only in first amend-

ment cases. While we acknowledge that the overbreadth doctrine has been generally applied in cases dealing with constitutionally protected expressive and associational rights, Laurence H. Tribe, *American Constitutional Law,* § 12–27 at 1022 (2d ed. 1988), the right of privacy finds its foundation, *inter alia,* in the penumbra of the First Amendment right of association. *Griswold v. Connecticut* (1965), 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510. Moreover, the traditional overbreadth argument seeks to escape the prohibitions of the statute by arguing that while the challenged statute may be constitutional in its application to the present case, it is ultimately unconstitutional because it would include protected speech or actions within its proscriptive sweep. Low, on the other hand, does not argue that the statute is unconstitutional, but merely argues that the legislature intended a narrow construction to avoid infringing upon protected freedoms.

4. *Cf. Webb, supra,* n. 2. While the court's opinion specifically addressed the free speech issue, we note that the prostitution statute did not require a narrowing construction there on the basis of infringement upon privacy rights, because the traditional marital relationship does not contemplate the performance of sexual acts for money or property.

most favorable to the State, along with all reasonable inferences to be drawn therefrom, to see if there is substantial evidence of probative value to support the verdict. *Clark v. State* (1990), Ind., 562 N.E.2d 11, 16.

Indiana Code 35–44–3–7 (1988) provides:

A person who, when ordered by a law enforcement officer to assist the officer in the execution of the officer's duties, knowingly or intentionally, and without a reasonable cause, refuses to assist commits refusal to aid an officer, a Class B misdemeanor.

Low argues that there is insufficient evidence that she "refused" to assist the officer.

■ While there is no statutory definition for the word "refuse," our supreme court has stated that "[t]he ordinary signification of the word 'refuse' is to deny a request or demand." *Burns v. Fox* (1887), 113 Ind. 205, 206, 14 N.E. 541, 542, *reh'g denied.* One may refuse by her actions as well as her words.

■ The evidence most favorable to the judgment is that escorts, including those employed by the "Yes, We Do" escort service, use codes in certain circumstances over the phone to indicate to their escort service whether they are safe. After being ordered by police officers not to tip off the caller from her escort service, Low spoke with her escort service over the phone. Her driver never returned to the hotel. The trier of fact could reasonably have inferred that Low tipped off the service, instructing them by code not to send the driver for her. Thus, there was substantial evidence of probative value to support the jury's verdict on the charge of refusal to assist an officer.

Low's conviction for obscene performance is reversed and her conviction for refusing to aid an officer is affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.