# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**MATTHEW D. ANGLEMEYER**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RODNEY MELTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-1008 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Carol J. Orbison, Judge
The Honorable Anne Flannelly, Master Commissioner
Cause No. 49G04-1203-FC-17439

**August 21, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Rodney Melton appeals his conviction and sentence for dissemination of matter harmful to minors as a class D felony and his sentence for child molesting as a class C felony. Melton raises three issues which we consolidate and restate as:

I.      Whether the evidence is sufficient to sustain Melton's conviction for dissemination of matter harmful to minors; and

II.     Whether Melton's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Melton was the boyfriend of Gloria Davis and lived with her and her two children, one of whom was C.D., born on September 19, 2000. C.D. called Melton "Keno or daddy." Transcript at 46. One day in January 2012, C.D. was awakened by Melton sucking on her chest and touching her chest with his hands. C.D. told Melton to stop, and Melton "was like no" and then Melton said "you better stop before I kill you." Id. at 49. C.D. felt like she "just better listen to him." Id. Davis then came upstairs and asked Melton what he was doing, and Melton said that he was waking C.D. C.D. did not tell Davis what had happened because she was scared and shocked.

Later that month, N.J., who was born on January 26, 1997 and was the daughter of one of Davis's friends, spent time at Davis's house. One morning, N.J., was sleeping on the couch in the living room and woke up to discover that Melton was rubbing her arms, legs, and chest. N.J. described the touching as "[s]exually" and "just like to entice me kind of." Id. at 29. N.J. was confused and looked around but did not see anyone other than Melton. N.J. asked Melton why he was touching her, and Melton stated: "It's okay.

2

We won't get caught." Id. at 30. Melton then lay on a mattress which was in front of the couch in the living room and told N.J. to sit next to him. N.J. sat on the couch and waited for Davis to return home. Melton then started to look at pornographic videos on his phone and showed them to N.J. In the first video, a man and a woman were having sex. The second video was of Melton and Davis in which Davis was performing oral sex on Melton. N.J. asked Melton where Davis and her children were, and Melton stated that they were gone, they would be back later, and that "it's okay." Id. at 32. Melton then "kind of like tried to tell [N.J.] to come next to him and stuff and then he pulled his penis out of his pants" and began masturbating. Id. at 33. N.J. did not go next to Melton and told him: "I'm ready to go. Where's – where's my mom. Where's [Davis]." Id. at 33. Melton then "kind of brushed it off," went in the kitchen, and said "everything's okay," and N.J. went upstairs. Id. at 34.

At some point, Davis returned to the house, but N.J. did not tell her what happened because she did not feel that Davis would handle the situation correctly. Davis's children eventually came home from school. When N.J.'s mother came to the house, N.J. told Davis's children what had happened, and C.D. told N.J. "other stuff that happened to her." Id. at 35. N.J. decided to tell an adult and told C.D.'s eighteen-year-old cousin. N.J. then told her mother that Melton had touched her, and Davis called the police.

On March 15, 2012, the State charged Melton with child molesting as a class C felony and dissemination of matter harmful to minors as a class D felony.[1] The jury found Melton guilty as charged.

---

[1] The charge of child molesting as a class C felony related to C.D., and the charge of dissemination of matter harmful to minors related to Melton's conduct with N.J.

3

The court found Melton's history of mental health issues and the facts that he had been diagnosed as bipolar and suffered from depression as mitigating factors. The court found Melton's position of trust with C.D. and to a lesser extent with N.J., "that this happened in the home with another minor present," that Melton threatened to kill C.D. if she disclosed the offense, and Melton's criminal history, including the fact that he had previously been sentenced to probation which was revoked, as aggravating factors. Id. at 175. The court found that the aggravators outweighed the mitigators and sentenced Melton to eight years for child molesting as a class C felony and three years for dissemination of matter harmful to minors as a class D felony. The court ordered the sentences to be served consecutive to each other for an aggregate sentence of eleven years.

I.

A. DISCUSSION

The first issue is whether the evidence is sufficient to sustain Melton's conviction for dissemination of matter harmful to minors. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of dissemination of matter harmful to minors is governed by Ind. Code § 35-49-3-3, which provides that "a person who knowingly or intentionally . . . engages in or conducts a performance before minors that is harmful to minors . . . commits a Class D felony." Ind. Code § 35-49-1-7 defines "performance" as "any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed before an audience of one (1) or more persons." Ind. Code § 35-49-2-2 provides:

A matter or performance is harmful to minors for purposes of this article if:

(1)     it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;

(2)     considered as a whole, it appeals to the prurient interest in sex of minors;

(3)     it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and

(4)     considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

The State charged that Melton "did knowingly or intentionally engage in, or conduct, a performance before minors that is harmful to minors specifically: Showing pornography to N.J. and/or showing N.J. his penis." Appellant's Appendix at 23. Thus, to convict Melton of dissemination of matter harmful to minors as a class D felony, the State needed to prove that Melton knowingly or intentionally engaged in or conducted a performance by showing pornography to N.J. and/or showing N.J. his penis and that such act was harmful to minors.

5

Without citation to the record, Melton argues that he was in his own private residence when he engaged in the conduct at issue. He asserts that "[b]ecause [his] acts occurred in a private area, he did not engage in a 'performance,' and his conviction must be reversed," relying on Riffel v. State, 549 N.E.2d 1084 (Ind. Ct. App. 1990), trans. denied, and Low v. State, 580 N.E.2d 737 (Ind. Ct. App. 1991). Appellant's Brief at 12.

In Riffel, the State charged Luke Riffel with Count II, conducting a performance harmful to a minor,[2] Count III, obscene performance,[3] and Count IV, obscene performance. 549 N.E.2d at 1085. The alleged incidents took place during Riffel's visitation period with his five-year-old son M.R. at the camping trailer residence of Riffel. Id. at 1085-1086. With respect to Count IV, the State alleged that Riffel stuck his finger in Tina Cramer's vagina and then placed his finger before the nose of M.R. and told M.R. to smell his finger. Id. at 1085. This Court found that the charges in Counts II and III rested entirely upon the repudiated statements of M.R. and that accordingly the evidence was insufficient to sustain the convictions on Counts II and III. Id. at 1088. The Court then *sua sponte* addressed whether the facts alleged in Count IV constituted an obscene performance, and reviewed Ind. Code § 35-49-1-7 which defines performance and the statutes related to obscene performances.[4] Id. The Court indicated that it was

---

[2] Ind. Code § 35-49-3-3(4).

[3] Ind. Code § 35-49-3-2.

[4] Specifically, the Court reviewed Ind. Code § 35-49-3-2 and Ind. Code § 35-49-2-1. 549 N.E.2d at 1088. At that time, Ind. Code § 35-49-3-2 provided: "A person who knowingly or intentionally engages in, participates in, manages, produces, sponsors, presents, exhibits, photographs, films, or videotapes any obscene performance commits a Class A misdemeanor. However, the offense is a Class D felony if the obscene performance depicts or describes sexual conduct involving any person who is or appears to be under sixteen (16) years of age." Ind. Code § 35-49-2-1 provided: "A matter or performance is obscene for purposes of this article if: (1) the average person, applying contemporary

6

"[e]ver mindful that criminal statutes are to be construed strictly against the State and may not be enlarged by construction, implication, or intendment beyond the fair meaning of the language used." Id. The Court held "the purpose of those statutes, and the legislative intent revealed by the language used, is to prohibit obscene performances of a theatrical, show, or entertainment nature, performed live, or on film or video, before an audience, and not to ban an act in a private setting, no matter how disgusting, such as the act charged against Riffel in Count IV." Id. at 1088. The Court also observed: "Riffel's conduct may or may not have constituted some other offense, a matter we need not decide. The crucial issue is that it did not constitute an obscene performance as defined by Indiana statutes. We may not expand the statutory definition." Id. Judge Hoffman dissented and stated:

> If the legislature had intended that the obscene performance statute not apply to those obscene performances done in a private setting, it could have so limited the statute. Likewise, the legislature could have confined the statute to only those obscene performances of a theatrical, show, or entertainment nature. However, the legislature did not restrict the statute in these ways and thus, it applies to obscene performances in private settings.

Id. at 1089-1090 (Hoffman, J., dissenting).

In Low, members of the Carmel Police Department were engaged in the investigation of suspected prostitution activity in Hamilton County. 580 N.E.2d at 738. As part of the investigation, the Department rented two adjoining rooms in a hotel. Id. Working undercover, Officer Roger Conn telephoned the "Yes, We Do" escort service and requested an escort. Id. Rose Low arrived at the hotel and eventually performed a

community standards, finds that the dominant theme of the matter or performance, taken as a whole, appeals to the prurient interest in sex; (2) the matter or performance depicts or describes, in a patently offensive way, sexual conduct; and (3) the matter or performance, taken as a whole, lacks serious literary, artistic, political, or scientific value."

"bed dance" whereby the officer lay on the bed in his underwear while she danced over him and exposed her breasts.  Id.  Low then inserted her finger in her vagina, and Officer Conn gave a code phrase which tipped the officers listening in the adjoining room to come in and make the arrest.  Id.  At the close of the State's evidence, Low moved to dismiss the charge of obscene performance, and the court denied the motion.  Id.  Low was convicted of obscene performance under Ind. Code § 35-49-3-2.  Id.

On appeal, Low argued that she was not engaging in a "performance" within the meaning of the statute.  Id. at 739.  This Court observed that the decision in Riffel was "clearly based upon the fact that Riffel's conduct occurred in a private forum, rather than a public forum" and held:

> Low correctly points out that if the statute is not narrowly construed, conduct similar to the acts in this case occurring between consenting married adults would fall within the purview of the statute.  We may give a narrow construction to statutes to save them from nullification if the construction does not establish a new or different policy basis and is consistent with legislative intent.  State v. Downey (1985), Ind., 476 N.E.2d 121, 123, reh'g denied.  The construction of the obscene performance statute in Riffel is consistent with the clear intent of the legislature.  To hold differently in the present case might allow the extension of the proscriptive reach of the statute to conduct which is constitutionally protected.  Eisenstadt v. Baird (1972), 405 U.S. 438, 453, 92 S. Ct. 1029, 1038, 31 L.Ed.2d 349; Stanley v. Georgia (1969), 394 U.S. 557, 568, 89 S. Ct. 1243, 1249-1250, 22 L.Ed.2d 542; Griswold v. Connecticut (1965) 381 U.S. 479, 485, 85 S. Ct. 1678, 1682, 14 L.Ed.2d 510.

Id. at 739-740 (footnotes omitted).  The Court concluded that the trial court erred in denying Low's motion to dismiss, as conduct such as that charged and proved by the State, when it occurs in a private setting, does not violate Indiana Code § 35-49-3-2, and reversed Low's conviction for obscene performance.  Id.

The State argues that as <u>Low</u> "did not involve an appeal from a conviction for dissemination of matter harmful to minors, those same policy considerations are not present in this case." Appellee's Brief at 10. The State also contends that "[w]hile Melton suggests that *Riffel* stands for the proposition that a person can commit whatever vile acts he or she desires in front of a minor so long as those acts are committed in a private setting, this Court has more recently declined to interpret *Riffel* in such a broad fashion" and cites <u>Sloan v. State</u>, 794 N.E.2d 1128 (Ind. Ct. App. 2003), <u>trans.</u> <u>denied</u>. <u>Id.</u> at 11. The State's position is that Melton's act of removing his penis from his pants and masturbating in front of N.J. constituted an exhibition or presentation performed before an audience of one or more persons, and that Melton's acts "may have been done in a private setting – i.e., the home that he shared with C.D.'s mother – but they were not done *in private*. Indeed, he showed pornography and masturbated in front of an audience: fourteen-year-old N.J." <u>Id.</u> The State also alleges that Melton did not enjoy any expectation of privacy when he engaged in these acts but instead encouraged N.J. to sit next to him while he viewed pornographic videos and gratified himself. The State further maintains that Melton should not escape criminal liability simply because he committed the crime inside his home instead of in public, and that there is no statutory requirement that the exhibition or presentation be performed in public.

In <u>Sloan</u>, John Sloan broke into the home of Melissa Holt where eight-year-old A.R., the daughter of Holt's boyfriend, was sleeping on the couch. 794 N.E.2d at 1130. A.R. awoke when she felt someone pull down her underwear. <u>Id.</u> She saw a man on the couch exposing and manipulating his penis. <u>Id.</u> The man then left the room, and A.R.

9

went to tell her father, but the intruder was no longer in the home. Id. Holt noticed that a window had been removed in the room where A.R. had been sleeping. Id. Fingerprints taken from the window matched Sloan's fingerprints. Id.

The State charged Sloan with burglary and conducting a performance harmful to minors. Id. After the State presented its evidence, Sloan moved for a directed verdict and argued that the acts he was alleged to have committed did not constitute a "performance" as defined by statute. Id. The trial court denied the motion, and the jury found Sloan guilty as charged, but the trial court entered judgment of conviction only as to the burglary. Id.

On appeal, Sloan argued that the trial court erred in denying his motion for a directed verdict. Id. at 1131. In discussing Sloan's argument, this Court observed that "[b]ecause the trial court did not enter a judgment of conviction upon Count II, the only issue before us is whether the evidence is sufficient to sustain Sloan's Burglary conviction." Id. at 1132. The Court held that the question of whether Sloan engaged in a performance is relevant to the burglary conviction in that conducting a performance harmful to minors was the felony which Sloan allegedly intended to commit when he broke and entered the home. Id. The Court clarified that the question was not precisely whether Sloan actually engaged in a performance, but whether he intended to conduct such a performance when he broke and entered the home. Id. The Court discussed Riffel and Low and held:

> If we were to read Riffel and Low broadly, we might agree with Sloan that what he did inside the Holt home, and what he intended to do when he broke into the house, was not a "performance" within the meaning of the statute because it did not take place "in public." However, we

perceive a subtle yet substantial difference between the factual situations present in Riffel and Low and the case at bar. In Riffel, the defendant's conduct was done in his own private residence. 549 N.E.2d at 1086. In Low, although the conduct at issue did not occur in a private residence, it did take place in a hotel room which had been rented by the police. 580 N.E.2d at 738. In both cases, the incidents took place in private areas in which the participants had a right to be. This is not so in the present situation.

Here, Sloan violated the privacy of Ms. Holt and her guests by breaking into the home. The privacy interests with which the Riffel and Low courts were so concerned are therefore not implicated by Sloan's actions. A defendant may not avail himself of the privacy of another by breaking and entering into the other's home. To accept Sloan's argument would be to allow him to benefit and seek refuge in the privacy of the home which he had invaded. We will not do so. Here, the evidence reveals that Sloan broke into the Holt home and pulled down A.R.'s underwear. Sloan then sat on the couch and exposed and manipulated his penis. This was an exhibition or presentation performed before an audience of one or more persons. See I.C. § 35-49-1-7. We do not read Riffel and Low to hold that a "performance" must be done in public, and to the extent that they suggest otherwise, we respectfully disagree. So long as the conduct at issue was not done *in private*, we hold that it may constitute a performance.

Of course, if something is done in private, it usually follows that it was not done in public. Here, however, we are presented with a perhaps unusual situation; although Sloan's acts were not done in public, neither were they done in the privacy of his own home or any place where he had a right to be. We therefore hold that the actions Sloan engaged in inside a home into which he broke and entered constituted a performance, and from this the jury could reasonably infer that when Sloan broke and entered the home, he intended to commit the felony of conducting a performance harmful to minors. The evidence is sufficient to support Sloan's conviction for Burglary, and the trial court did not err in denying his motion for a directed verdict.

Id. at 1134.

## B. DECISION

To the extent that Melton cites Low, we find that case distinguishable. As pointed out by the State, Low did not involve an appeal from a conviction for dissemination of

matter harmful to minors. Rather, <u>Low</u> involved two adults in a hotel room and a charge of an obscene performance under Ind. Code § 35-49-3-2. With respect to <u>Riffel</u>, we observe that the discussion in <u>Riffel</u> related to engaging in an obscene performance and not dissemination of matter harmful to minors. To the extent that the majority's discussion of a performance in <u>Riffel</u> suggests that a performance involved in a charge of dissemination of matter harmful to minors must occur in public, we disagree. As pointed out by Judge Hoffman in his dissent in <u>Riffel</u>, there is no requirement in the statute defining performance that the performance take place in public. 549 N.E.2d at 1089 (Hoffman, J., dissenting). Rather, the statute provides that a "performance" is "any play, motion picture, dance, or other exhibition or presentation, whether pictured, animated, or live, performed *before an audience of one (1) or more persons*." Ind. Code § 35-49-1-7 (emphasis added). We are also mindful that the legislature listed defenses to prosecution for dissemination of matter or conducting performance harmful to minors in Ind. Code § 35-49-3-4 and did not mention that merely being in a private place is a defense.[5]

---

[5] Ind. Code § 35-49-3-4 provides in part:

    (a)    It is a defense to a prosecution under section 3 of this chapter for the defendant to show:

        (1)    that the matter was disseminated or that the performance was performed for legitimate scientific or educational purposes;

        (2)    that the matter was disseminated or displayed to or that the performance was performed before the recipient by a bona fide school, museum, or public library that qualifies for certain property tax exemptions under IC 6-1.1-10, or by an employee of such a school, museum, or public library acting within the scope of the employee's employment;

        (3)    that the defendant had reasonable cause to believe that the minor involved was eighteen (18) years old or older and that the minor exhibited to the defendant a draft card, driver's license, birth

Accordingly, we conclude that the evidence was sufficient to sustain Melton's conviction for dissemination of matter harmful to minors as a class D felony.

## II.

## A. DISCUSSION

The next issue is whether Melton's sentence is inappropriate in light of the nature of the offense and the character of the offender.[6] Ind. Appellate Rule 7(B) provides that

certificate, or other official or apparently official document purporting to establish that the minor was eighteen (18) years old or older; or

(4)    that the defendant was a salesclerk, motion picture projectionist, usher, or ticket taker, acting within the scope of the defendant's employment and that the defendant had no financial interest in the place where the defendant was so employed.

(b)    Except as provided in subsection (c), it is a defense to a prosecution under section 3 of this chapter if all the following apply:

(1)    A cellular telephone, another wireless or cellular communications device, or a social networking web site was used to disseminate matter to a minor that is harmful to minors.

(2)    The defendant is not more than four (4) years older or younger than the person who received the matter that is harmful to minors.

(3)    The relationship between the defendant and the person who received the matter that is harmful to minors was a dating relationship or an ongoing personal relationship. For purposes of this subdivision, the term "ongoing personal relationship" does not include a family relationship.

(4)    The crime was committed by a person less than twenty-two (22) years of age.

(5)    The person receiving the matter expressly or implicitly acquiesced in the defendant's conduct.

[6] Melton argues that the trial court abused its discretion by not considering his drug and alcohol abuse as a mitigator and finding "that this happened in the home with another minor present" and his criminal history as aggravators. Transcript at 175. However, "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans.

we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Our review of the nature of the offense reveals that Melton awakened C.D., who called Melton "Keno or daddy" and was the daughter of his girlfriend, by sucking on her chest and touching her chest with his hands. Transcript at 46. When C.D. asked Melton to stop, Melton "was like no" and then Melton said "you better stop before I kill you." Id. at 49. While N.J., the daughter of Davis's friend, was staying over at Davis's house, Melton woke her up by rubbing her arms, legs, and chest. N.J. asked Melton why he was touching her, and Melton stated: "It's okay. We won't get caught." Id. at 30. Melton then laid on the mattress which was in front of the couch in the living room and told N.J. to sit next to him. Melton then started to look at pornographic videos on his phone and showed them to N.J. In the first video, a man and a woman were having sex. The second

denied; see also Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that in the absence of a proper sentencing order, we may either remand for resentencing or exercise our authority to review the sentence pursuant to Ind. Appellate Rule 7(B)), reh'g denied; Shelby v. State, 986 N.E.2d 345, 370 (Ind. Ct. App. 2013) (holding that "even if the trial court did abuse its discretion by failing to consider the alleged mitigating factor of residual doubt, this does not require remand for resentencing"), trans. denied. Accordingly, we need not discuss Melton's contentions that the court abused its discretion in sentencing him if we determine that his sentence is not inappropriate.

Melton also cites Article 1, Section 18 of the Indiana Constitution and argues that the judicial branch should seek to follow this legislative goal in its sentencing pronouncements. To the extent that Melton suggests that his sentence violates Article 1, Section 18 of the Indiana Constitution, which provides that "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice," we note that the Indiana Supreme Court has held that "particularized, individual applications are not reviewable under Article 1, Section 18 because Section 18 applies to the penal code as a whole and does not protect fact-specific challenges." Ratliff v. Cohn, 693 N.E.2d 530, 542 (Ind. 1998), reh'g denied.

video was of Melton and Davis in which Davis was performing oral sex on Melton. When N.J. asked Melton where Davis and her children were, Melton stated that they were gone, they would be back later, and that "it's okay." Id. at 32. Melton then "kind of like tried to tell [N.J.] to come next to him and stuff and then he pulled his penis out of his pants" and began masturbating. Id. at 33. N.J. did not go next to Melton and told him: "I'm ready to go. Where's – where's my mom. Where's [Davis]." Id. Melton then "kind of brushed it off," went into the kitchen, and said "everything's okay." Id. at 34.

Our review of the character of the offender reveals that, according to the presentence investigation report ("PSI"), Melton was twenty-two years old at the time of sentencing and had a lengthy criminal history. He admitted to using marijuana, cocaine, and ecstasy on a daily basis. Melton is bipolar and suffers from depression. As a juvenile, in 2004 a true finding was entered against Melton for "Motor Vehicle – Unlawful – 2 Year (Misdemeanor)." PSI at 4. In 2005, a true finding was entered against Melton for "Unlawful Driving Away" as a felony and receiving and concealing stolen property as a felony. Id. As an adult, Melton has convictions for possession of "Marijuana / Hash Oil / Hashish / Salvia / Synthetic Cannabinoid" in 2008; carrying a concealed weapon as a felony and receiving stolen property as a felony in 2009; and felony theft and misdemeanor carrying a handgun without a license in 2011. Id. at 5. In 2010, Melton was charged with two counts of criminal confinement as class B felonies, two counts of robbery resulting in bodily injury as class B felonies, and carjacking as a class B felony, but these counts were dismissed. In 2011, Melton's probation was revoked after a violation was filed alleging that he failed to report to probation as

15

directed, failed to maintain a verifiable address, and failed to make a good faith effort toward paying court ordered fees. In April 2012, Melton was charged with rape as a class A felony, two counts of criminal deviate conduct as class A felonies, two counts of criminal confinement as class B felonies, robbery resulting in bodily injury as a class B felony, and intimidation as a class D felony, and these charges were pending at the time the PSI was completed.

## B. DECISION

After due consideration of the trial court's decision, including Melton's serious and escalating criminal history despite his young age, and the depravity of the offenses, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. See Leffingwell v. State, 810 N.E.2d 369, 372 (Ind. Ct. App. 2004) (focusing on the nature, extent, and depravity of the offense and what it reveals about the defendant's character, and holding that the trial court's decision to impose the maximum sentence of eight years for child molesting as a class C felony was not inappropriate).

## CONCLUSION

For the foregoing reasons, we affirm Melton's conviction for dissemination of matter harmful to minors as a class D felony and his aggregate sentence.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.

16